MOODY v PULTE HOMES, INC

Docket No. 61759. Submitted January 20, 1983, at Detroit.—Decided May 17, 1983. Leave to appeal applied for.

Marvin and Annie Moody brought an action for damages against Pulte Homes, Inc., and Clyde Cinader. The action arose out of an injury in which Marvin Moody lost a portion of his left hand while he was helping to start a bulldozer. Defendant Cinader was a subcontractor employed by Pulte Homes to perform backfilling and grading at a construction site. Marvin Moody had been hired by Cinader to haul dirt at the site. Cinader's son was attempting to start the bulldozer when Moody was injured. The cause of the accident was disputed at trial. Plaintiffs pled both negligence and breach of contract as bases for liability. Judgment was entered for defendants on a jury verdict of no cause of action, Oakland Circuit Court, John N. O'Brien, J. Plaintiffs appeal, alleging several errors. *Held:*

1. The trial court erred by refusing to rule on the parties' proposed jury instructions prior to closing arguments. The error was harmless, however, because the plaintiffs were not materially prejudiced and their attorney's closing argument was not affected.

2. The court did not abuse its discretion by refusing to order defendants to introduce portions of a witness's deposition where

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 810.
 75 Am Jur 2d, Trial § 584.
[2] 5 Am Jur 2d, Appeal and Error § 774.
 23 Am Jur 2d, Depositions and Discovery § 174 *et seq.*
[3] 75 Am Jur 2d, Trial § 643.
[4] 5 Am Jur 2d, Appeal and Error §§ 623, 891.
[5] 75 Am Jur 2d, Trial § 1025 *et seq.*
 Tests or experiments in jury room. 95 ALR2d 351.
[6] 29 Am Jur 2d, Evidence §§ 404-407.
 Admissibility of evidence, and propriety and effect of questions, statements, comments, etc., tending to show that defendant in personal injury or death action carries liability insurance. 4 ALR2d 761.
[7] 75 Am Jur 2d, Trial § 580.

the court did allow the plaintiffs to introduce the disputed portion of the deposition during redirect examination.

3. The trial court did not present the plaintiffs' theory of the case to the jury as it was submitted by the plaintiffs. the instructions given by the court did, however, sufficiently give the material substance of plaintiffs' theory.

4. The taking of exhibits and other evidence into the jury room lies within the discretion of the trial court. The court did not abuse its discretion in refusing to allow certain portions of a deposition and a statement relating to insurance coverage to be taken into the jury room.

5. Plaintiffs' claim that the trial court erred by not instructing the jury with certain standard jury instructions and special jury instructions fails because the instructions referred to are not applicable to the case. The determination of whether a requested jury instruction is applicable and accurately states the law involved is within the trial court's discretion. The instructions which were given by the trial court stated the applicable law.

Affirmed.

1. TRIAL — JURY INSTRUCTIONS — HARMLESS ERROR.

A trial court must rule on the parties' proposed jury instructions before the final arguments of the parties to the jury; however, failure of a court to rule on the proposed instructions prior to argument may be found to be harmless error where the parties were not prejudiced by the failure (GCR 1963, 516.1).

2. EVIDENCE — DEPOSITIONS.

The admissibility of a deposition is within the discretion of the trial court, and the court's exercise of discretion will be upheld absent a manifest abuse of that discretion.

3. TRIAL — THEORY OF CASE.

A trial court is required to present to the jury a party's theory of the case, when requested to do so, after the close of the evidence; the theory must be given either as submitted or edited so as to present to the jury the material substance of the theory (GCR 1963, 516.7).

4. APPEAL — JURY INSTRUCTIONS — PRESERVING QUESTION.

Generally, failure to object at trial to a jury instruction precludes appellate review absent manifest injustice.

5. TRIAL — EVIDENCE — EXHIBITS.

The admission of evidence and the taking of exhibits to the jury

room is within the discretion of the trial court, without regard to the testimonial or nontestimonial nature of the items at issue.

6. EVIDENCE — INSURANCE — NEGLIGENCE.

Reference to insurance is not favored by the courts in negligence actions (MCL 500.3030; MSA 24.13030; MRE 411).

7. TRIAL — JURY INSTRUCTIONS.

The determination of whether a requested jury instruction is applicable and accurately states the law is addressed to the trial court's discretion.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Nicholas J. Rine),* for plaintiffs.

*Sullivan, Ward & Bone, P.C.* (by *Stephen L. Witenoff),* for defendants.

Before: V. J. BRENNAN, P.J., and GRIBBS and C. J. HOEHN,* JJ.

V. J. BRENNAN, P.J. Plaintiffs appeal as of right from the jury's verdict of no cause of action.

A portion of Marvin Moody's left hand was amputated after the hand was pulled between a fan belt and a pulley as Moody was allegedly helping Scott Cinader to start a bulldozer at a construction site. Scott Cinader worked for his father, Clyde Cinader, who was employed by Pulte Homes to perform backfill and grading work at a residential construction project. Moody was hired by Clyde Cinader to haul dirt at the construction site. At the time of the accident, Moody, Scott Cinader and Duane Joyce were in the area. The cause of the accident was disputed at trial.

Moody testified that Scott Cinader attempted to start an old bulldozer, but the machine would not start. Scott requested Moody to assist him in start-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ing the bulldozer. Moody was on one side of the bulldozer and Scott Cinader was on the other side. Duane Joyce was working at a location approximately 500 feet away. Moody contended that he and Scott were looking for broken wires. Moody discovered that the fan belt was loose, and he asked Scott to come and look at the fan belt and not to start the engine. At that point, Scott attempted to start the engine by placing a metal object over the starter's solenoid. Moody was holding the fan belt with his left hand. The engine turned over and Moody's hand was pulled between the fan belt and a pulley.

Scott testified that he and Moody were loading Moody's truck with dirt. Duane Joyce was working approximately 300 to 400 feet away trying to start the bulldozer. The bulldozer would not start. Joyce walked over and asked Scott for some help. Scott contended that he and Joyce walked back to the bulldozer. At this point, plaintiff was backing his truck up. The bulldozer's ignition button would not work. Scott attempted to start the bulldozer by placing a key across the starter's solenoid. The engine turned over, and Scott heard Marvin Moody scream. This is the first time Scott saw Moody near the bulldozer. On the way to the hospital, Moody told Scott, "He couldn't believe how dumb he was after being around this business so many years, he would do something stupid like that."

Duane Joyce testified that he worked for Clyde Cinader at the time of Moody's injury. He could not start the bulldozer so he motioned for Scott Cinader to come over. Scott came over to the bulldozer. Joyce was sitting in the bulldozer's seat. Marvin Moody was standing on the running board of his truck, approximately 25 to 30 feet from the

bulldozer. Moody yelled something, but Joyce did not understand what he said. Scott Cinader came to the left side of the bulldozer, leaned over into the engine compartment, and placed a piece of metal across the solenoid. Joyce was watching Scott. The engine turned over, and Joyce heard Moody screaming. Joyce had no idea that Moody was near the bulldozer.

On August 17, 1977, plaintiffs filed a complaint against Pulte Homes and Clyde Cinader. In Count I, plaintiffs alleged that Marvin Moody suffered an amputation of a portion of his left hand on May 23, 1977, when it was caught in a bulldozer being operated by an employee of Cinader on a construction site managed by Pulte Homes in Oakland County; that the work undertaken by Cinader for Pulte Homes was inherently dangerous; and that Pulte Homes was negligent in hiring a careless and incompetent contractor, in failing to exercise control over the personnel and equipment brought onto the construction site, and in failing to supervise the construction. Plaintiffs contended that Pulte Homes was vicariously liable for the negligent acts of defendant Cinader. Plaintiffs also alleged that Cinader was negligent in hiring incompetent employees and allowing them to operate heavy equipment and in failing to supervise his employees. Plaintiffs contended that Cinader was vicariously liable for the negligence of an employee who started a bulldozer without warning or permitting Marvin Moody to get clear of the area. Plaintiffs alleged that defendants' acts of negligence were the proximate cause of Marvin Moody's injuries and damages. Furthermore, Marvin Moody's wife, Annie Moody, alleged a loss of consortium.

Count II of plaintiffs' complaint claimed a

breach of a third party contract, plaintiffs alleging that pursuant to the express terms of the construction contract between Pulte Homes and Cinader the defendants assumed certain duties with respect to the project's safety. Defendants were alleged to have breached the contract by failing to protect Marvin Moody from the construction accident.

At trial, a contract executed by Pulte Homes and Clyde Cinader was admitted into evidence. The contract was dated November 12, 1976, and provided that Cinader would perform backfill and grading work for Pulte Homes at a residential construction project in Troy referred to as Forest View Village. The contract required defendant Cinader to give the project his personal attention and to maintain a competent supervisor at the job site at all times. Cinader was required to "take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to: (a) all employees on the work and all other persons who may be affected thereby * * *". The contract required Cinader to perform the work as required by Pulte Homes under the direction of Pulte's superintendent and gave to Pulte Homes the right to require replacement of Cinader's supervisor at any time.

Plaintiffs' first claim is that the trial court erred by failing to advise counsel before closing argument of the court's proposed action on the requests for jury instructions.

After the presentation of proofs, counsel for both parties submitted their proposed jury instructions for review by the trial court. During this time, each party was allowed to object to any instructions considered irrelevant or misleading. When the arguments on the proposed jury instructions

were completed, the trial court directed counsel to proceed with closing arguments. The court denied plaintiffs' request for a ruling on the proposed instructions. Ultimately, plaintiffs learned that the court had decided not to give certain instructions in the form and manner requested by plaintiffs. Specifically, the trial court declined to recite verbatim SJI 3.06 (cautionary instruction regarding reference to parties' insurance), SJI 3.10 (regarding consideration of circumstantial evidence) and SJI 5.01 and SJI 5.02 (regarding impeachment of witnesses). The trial court also declined to present to the jury special instructions centering on the primary liability of defendant Cinader for failure to control and supervise and the vicarious liability of both defendants for the alleged negligence of Scott Cinader. After the trial court concluded its jury charge, plaintiffs were permitted to enter on the record an objection to the court's failure to rule on the proposed jury instruction before the parties presented their arguments. On appeal, plaintiffs contend that the court's failure to comply with GCR 1963, 516.1 constituted reversible error.

GCR 1963, 516.1 provides in pertinent part:

"1. Request for Instructions. At or before the close of the evidence, any party may, or at any time the court reasonably directs, the parties shall file written requests that the court instruct the jury on the law as set forth in the request. A copy of such requested instructions shall be served on the adverse parties in accordance with Rule 107. The court shall inform counsel of its proposed action on the requests prior to their arguments to the jury, and, subject to the provision of subrule 516.3, shall instruct the jury after the arguments are completed."

Thus, by submitting comprehensive written re-

quests to charge, upon which the trial court must rule before arguments are made to the jury, counsel should be in a position to know when the charge is given whether a proper instruction was omitted or an improper one given. *Hunt v Deming,* 375 Mich 581; 134 NW2d 662 (1965); *Harmon v Stanley,* 56 Mich App 602, 604; 224 NW2d 658 (1974). The obvious purpose of this provision is to enable counsel to know which request will be granted or denied in order to argue the facts in light of the law as the court will charge the jury.

Here, the trial court did not comply with GCR 1963, 516.1. Thus, the trial court erred. However, we find that the error in this case was harmless because plaintiffs have not shown that they were materially prejudiced. Plaintiffs' closing and rebuttal arguments were quite short. Plaintiffs' attorney emphasized that his argument was going to be as brief as possible. Consequently, the evidence and plaintiffs' theories of liability were not discussed in great detail, although the theories of liability were mentioned. We conclude that the trial court's failure to comply with GCR 1963, 516.1 did not affect the attorney's closing argument and plaintiffs were not prejudiced. Further, we find that trial counsel was not hampered in ascertaining whether the charge was properly given.

Plaintiffs' second claim is that the trial court erred by refusing to comply with GCR 1963, 302.4(4), which provides:

"(4) If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts."

Also, MRE 106 provides:

"When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

The above rules are designed to prevent unfairness which may result if a statement is taken out of context. However, a trial court has discretion in ruling on the admissibility of a deposition, and the court's exercise of discretion will be upheld unless an abuse of discretion is manifest. *Hilyer v Hole,* 114 Mich App 38, 41; 318 NW2d 598 (1982).

In this case, Marvin Moody testified that Scott Cinader attempted to start the bulldozer's engine by placing a metal object over the starter's solenoid. On cross-examination, a portion of Moody's deposition transcript was read, in which Moody stated that he touched the wires that started the bulldozer. Moody contended that the deposition transcript read by defense counsel contained misprints or mistakes, and that he did not testify on oral examination as having touched the wires. At this point, plaintiffs' attorney requested that the court require defendants to read other portions of Moody's deposition relevant to the ignition of the bulldozer engine. The court ruled that plaintiffs' attorney could address the issue on redirect examination. On redirect examination, Moody contended that he did not start the bulldozer. Further, plaintiffs' counsel read at length from Moody's deposition, with continued verification by Moody, in an attempt to convince the jury that the reporter had incorrectly transcribed Moody's testimony on several pages, including the page read by defense counsel during cross-examination and admitted into evidence as defendants' Exhibit A. Plaintiffs then marked and entered into evidence several

pages of Moody's deposition transcript with the admitted transcript pages being marked as plaintiffs' Exhibits 5 through 8. On appeal, plaintiffs contend that the trial court committed reversible error by refusing to require defendants to introduce into evidence the portions of Moody's deposition which were relevant to starting the bulldozer engine.

Instead of requiring the defendants to introduce into evidence the portions of Moody's deposition that were relevant to the starting of the bulldozer, the trial court stated that plaintiffs could introduce the evidence during Moody's redirect examination. Because the deposition was admitted into evidence and brought to the jury's attention, we conclude that the trial court did not abuse its discretion by denying plaintiffs' request to have defendants introduce into evidence the deposition testimony.

Plaintiffs' third claim is that the trial court erred by failing to present to the jury the plaintiffs' theory of the case.

GCR 1963, 516.7 provides:

"Statement of Issues and Theories of the Parties (SJI 20.01).

"(a) The court shall present to the jury the issues in the case and, if a party requests after the close of the evidence, that party's theory of the case.

"(b) After the close of the evidence each party shall submit in writing to the court a statement of the issues and, if a party makes a request under subrule .7(a), his theory of the case as to each issue. The statement must be concise, be narrative in form, and set forth as issues only those disputed propositions of fact which are supported by the evidence. It must be submitted in addition to requests for instructions submitted under subrule 516.1. The theory may include those claims supported by the evidence or admitted.

"(c) The court need not give the statement or theory in the form submitted if the court presents to the jury the material substance of the issues and of the theories of each party."

GCR 1963, 516.7 is mandatory. The trial court must either give the theory as submitted or edit it so as to present to the jury the material substance of the theory. *Webb v Travelers Ins Co,* 98 Mich App 157, 160; 296 NW2d 216 (1980); *Mazurek v Standard Oil Co,* 90 Mich App 209, 212; 282 NW2d 286 (1979), *lv den* 407 Mich 869 (1979); *Moore v B & C Family Center, Inc,* 85 Mich App 600, 603; 272 NW2d 150 (1978). On appeal, plaintiffs contend that the trial court did not instruct the jury on the material substance of each of plaintiffs' theories of liability. At trial, plaintiffs did not object to the court instruction on the theory of plaintiffs' case. Generally, where a party fails to so object, appellate review is precluded absent manifest injustice. *Danaher v Partridge Creek Country Club,* 116 Mich App 305, 318; 323 NW2d 376 (1982); *Drouillard v Metropolitan Life Ins Co,* 107 Mich App 608; 310 NW2d 15 (1981), *lv den* 413 Mich 874 (1982).

The trial court gave the following instruction:

"It is the plaintiff's claim that he was asked to assist in the starting of defendant Cinader's bulldozer, and while checking the fan belt defendant Cinader's son turned the engine over, and that cut off one finger and seriously injured another one, and that the conduct of Cinader's son was negligent and that negligence resulted in the injury to his hand and he is asking that he be compensated for that injury in damages that have to be translated into dollars and cents. There has been submitted and I think they are exhibits 2 and 3 which indicate hospital and doctor bills, and of course it is up to you to concern yourselves about the loss of the use of the hand and the finger, and permanence of the loss of the finger.

"Plaintiff further claims the defendant Pulte should have been out there on the job site, either supervising or controlling the conduct of the Cinaders in such a fashion that the injury could not have occurred, and that they breached a duty in not supervising and controlling, and because of that, they are also liable for the injury that has been suffered by the plaintiff."

We find that the instruction given by the trial court gave the material substance of plaintiffs' theory. Therefore, there was no manifest injustice and no reversible error.

Plaintiffs' next claim is that the trial court erred by refusing to allow the jury to take certain exhibits admitted into evidence into the jury room.

Several pages of Marvin Moody's deposition testimony were admitted into evidence. Furthermore, a two-page hand-written statement by Marvin Moody was admitted into evidence. Over the objections of plaintiffs' attorney, the trial court ruled that these exhibits would not be submitted to the jury for deliberation. On appeal, plaintiffs argue that the trial court's ruling constituted reversible error.

The admission of evidence and taking of exhibits to the jury room lies within the discretion of the trial court, apparently without regard to the testimonial or nontestimonial nature of the items at issue. *Socha v Passino,* 405 Mich 458, 471; 275 NW2d 243 (1979).

Here, the trial court refused to allow Moody's written statement to be taken into the jury room. Apparently, Moody's statement contained references to insurance coverage. In negligence actions, reference to insurance is not favored by the courts. See MRE 411; MCL 500.3030; MSA 24.13030. Consequently, we find that the trial court did not

abuse its discretion by refusing to submit Moody's statement to the jury.

Also, the trial court refused to allow certain pages of Moody's deposition to be taken into the jury room. Traditionally, it has been improper to let the jury take the testimony, consisting of books, papers, and depositions, with them into the jury room. *Chadwick v Chadwick,* 52 Mich 545, 549; 18 NW 350 (1884). In the present case, the jury heard Moody's testimony and was fully apprised of the relevant portions of his deposition testimony. Hence, the trial court did not abuse its discretion by refusing to allow the deposition testimony to be taken into the jury room.

Plaintiffs also claim that the trial court erred by failing to instruct the jury on certain standard civil jury instructions requested by plaintiffs. At trial, plaintiffs requested the court to read to the jury, SJI 3.06, 3.10, 5.01 and 5.02. The court did not read these instructions to the jury. Plaintiffs objected to the trial court's failure to give these instructions.

GCR 1963, 516.6(2) provides:

"(2) Pertinent portions of Michigan Standard Jury Instructions (SJI) published under authority of this subrule shall be given in each civil case in which jury instructions are given if (a) they are applicable and (b) they accurately state the applicable law."

The determination of whether a requested jury instruction is applicable and accurately states the law is addressed to the trial court's discretion. *Socha v Passino,* 405 Mich 458; 275 NW2d 243 (1979).

Here, the court refused to given SJI 3.06, which provides:

"Whether a party is insured has no bearing whatever on any issue that you must decide. You must refrain from any inference, speculation, or discussion about insurance."

At trial, the matter of insurance was not placed before the jury. The only reference to insurance was in Moody's statement, which the court excluded from the jury. Consequently, SJI 3.06 was not applicable to the present case. However, it should be noted that once the jury had begun deliberations, they submitted a question asking whether Moody had insurance to cover on-site accidents. At this point, pursuant to the agreement of both counsel, the court gave an instruction substantially similar to SJI 3.06. Hence, there was no error.

The court refused to give SJI 3.10, which provides:

"It is not necessary that every fact be proven directly by a witness or an exhibit. A fact may be proven indirectly by other facts or circumstances, from which it usually and reasonably follows according to the common experience and observation of mankind. This is called circumstantial evidence, which you are to consider along with other evidence in the case."

Plaintiffs failed to state why they believe that this instruction was applicable. Consequently, we find that the trial court did not abuse its discretion by failing to give SJI 3.10.

Next, the court refused to give SJI 5.01 and 5.02 which provide:

"SJI 2d 5.01. Impeachment of Witness (Not a Party) by Prior Inconsistent Statement or Conduct.

"In deciding whether you should believe a witness, you may consider the fact that at some earlier time

[he/or/she] said something that does not agree with what [he/or/she] testified to here · on an important point. What [he/or/she] said earlier may be considered only in deciding whether you should believe [him/or/her] and may not be considered as proof of the facts in [his/or/her] earlier statement (unless [he/or/she] testified that [his/or/her] earlier statement was true, in which event it may be considered as proof of the facts in the statement).

"SJI 2d 5.02. Impeachment of a Party by Prior Inconsistent Statement or Conduct.

"In deciding whether you should believe a party who has testified you may consider that at some earlier time [he/or/she] [said/did] something that does not agree with what [he/or/she] testified to here on an important point. Because [he/or/she] is a party, what [he/or/she] [said/did] earlier may be considered not only in deciding whether you should believe [him/or/her], but also may be considered as evidence of the facts in this case."

SJI 5.01 was not applicable to the present case. Duane Joyce and Scott Cinader were the only nonparty witnesses at trial. Plaintiffs' attorney did not impeach either of these individuals with prior inconsistent statements or conduct. Thus, SJI 5.01 was inapplicable to the present case and the court did not err by refusing to give the instruction.

At trial, defense counsel attempted to impeach Marvin Moody's credibility with two prior statements. Moody's deposition and his written statement were admitted into evidence. The trial court gave the following instruction:

"As to the credibility of witnesses, you are the sole judges of the facts in the case and you have to determine which witnesses you will believe and what weight you will give that testimony. In doing so, you may take into account the witnesses ability and opportunity to observe, the witnesses memory and manner while testifying, any interest or bias or prejudice a witness might

have, and the reasonableness of the testimony considered in light of all of the other evidence in the case.

\* \* \*

"During the trial we had some evidence presented to us by the reading of depositions and, as we have said, a deposition is a record of the sworn testimony of a party or a witness that was taken before an authorized person. And, of course, all of the parties and their attorneys had a right to be present and to examine or cross-examine such a witness and that evidence is entitled to the same consideration as you would give the same testimony had the witnesses testified here in open court."

We find no error on the part of the trial court by not giving the standard instruction regarding impeachment. The instruction given by the court stated the law applicable to the facts of this case. There was some question as to whether the deposition accurately reflected Moody's testimony. It was Moody's contention that his testimony was incorrectly transcribed. Therefore, an impeachment instruction was not necessarily appropriate. The determination of whether the requested instruction is applicable and accurate is within the trial court's discretion. *Zmija v Baron,* 119 Mich App 524, 540; 326 NW2d 908 (1982). Here, we find no abuse of discretion.

Plaintiffs' final claim is that the trial court erred by failing to present special jury instructions requested by plaintiffs. After reviewing the instructions, we find that the trial court's instructions, for the most part, stated the applicable law. Even where they do not, we find that the result at trial would not have been different had plaintiffs' proposed instructions been given. We note that the trial court was not required to give any instructions regarding the liability of Pulte Homes on the breach of the alleged third-party beneficiary con-

tract. The trial court granted a directed verdict in favor of Pulte Homes on this count. In addition, the record does not contain sufficient evidence to warrant an instruction on whether Pulte Homes was negligent in hiring Clyde Cinader.

Affirmed.