*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES PARKER HUFFMAN,

Defendant-Appellant.

UNPUBLISHED
November 14, 2019

No. 344612
Berrien Circuit Court
LC No. 2017-015948-FC

Before: MURRAY, C.J., and MARKEY and BECKERING, JJ.

PER CURIAM.

Defendant, James Parker Huffman, appeals as of right his jury trial conviction of one count of first-degree murder, MCL 750.316. The trial court sentenced defendant to a life sentence. We affirm.

## I. BACKGROUND

This case stems from defendant's murder of the victim, his wife. According to defendant, the victim requested that he participate in a suicide pact with her. Defendant alleged that financial struggles and health problems motivated their agreement. In accordance with this alleged suicide pact, defendant strangled the victim to death about an hour after their discussion. Defendant related that it took him about five minutes of strangling before he was sure that the victim died because of a "pop" in her neck. At some point, defendant bound the victim in duct tape, and placed a blanket on her.

According to defendant, he then attempted in numerous ways to kill himself, but he was unsuccessful. Afterward, defendant turned himself in at the Niles Police station, whereupon he was taken to an interview room, and confessed to killing the victim in the manner described. He was then charged with one count of first-degree murder. Later, defendant denied having the requisite premeditation necessary for first-degree murder.

At trial, the prosecution presented evidence consistent with defendant's story. This included a video recording of defendant's confession and his statement that he killed the victim as part of a suicide pact. However, the prosecution also presented evidence tending to show that

-1-

there was no suicide pact between defendant and the victim. This evidence included the fact that the victim was bound with duct tape, and the injuries at the neck and mouth may have indicated struggle. The prosecution also presented testimony from the victim's daughter and coworkers, who testified that the victim was in good spirits, and discussed long-term plans with them, such as her daughter's wedding and the prospect of receiving disability payments. According to defendant's neighbor, he heard a loud crash and raised voices from defendant's home at the approximate time that defendant claimed that he killed the victim.

On cross-examination, defendant did elicit some evidence of the financial and physical troubles that the victim was experiencing, but he was prevented from further inquiry into certain subjects regarding the victim's mental state, and from calling a benefits manager, based on relevancy.

## II. ISSUES

Defendant challenges the trial court's refusal to permit him to question witnesses regarding the victim's allegedly suicidal state of mind and financial difficulties.

A trial court's decision regarding whether to admit evidence is reviewed for an abuse of discretion. *People v Muhammad*, 326 Mich App 40, 47; 931 NW2d 20 (2018). A trial court abuses its discretion when its decision is "outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). "A trial court necessarily abuses its discretion when it makes an error of law." *People v Waterstone*, 296 Mich App 121, 132; 818 NW2d 432 (2012).

Error in the admission or the exclusion of evidence is not a ground for reversal unless refusal to take this action appears "inconsistent with substantial justice." *People v Watkins*, 491 Mich 450, 491; 818 NW2d 296 (2012) (quotation marks and citation omitted). "[R]eversal is required only if the error is prejudicial. The defendant claiming error must show that it is more probable than not that the alleged error affected the outcome of the trial in light of the weight of the properly admitted evidence." *People v McLaughlin*, 258 Mich App 635, 650; 672 NW2d 860 (2003) (citations omitted).

Defendant concedes that the consent of the victim is not a defense to first-degree murder. See *People v Kevorkian*, 248 Mich App 373, 442; 639 NW2d 291 (2001) ("Simply put, consent and euthanasia are not recognized defenses to murder."). In addition, " '[a] trial court may exclude from the jury testimony concerning a defense that has not been recognized by the Legislature as a defense to the charged crime.' " *Id*. at 442-443 (alteration in original), quoting *People v Demers*, 195 Mich App 205, 207; 489 NW2d 173 (1992).

To circumvent this caselaw, defendant argues that he did not wish to introduce evidence of the victim's consent for the purpose of justifying the killing, but rather, he wanted to introduce evidence of the victim's consent to mitigate any evidence of defendant's premediated intent to kill. Defendant argues that because there was no evidence of defendant's motive to kill the victim, this evidence was particularly relevant to showing that defendant did not develop a premediated intent to murder.

However, defendant's argument fails to make a logical connection to the proffered evidence of the victim's intent to commit suicide and defendant's premediated intent to kill without running afoul of *Kevorkian*'s prohibition of consent and euthanasia as a defense. Defendant declares that the victim's suicidal mindset was relevant to show when precisely defendant solidified his intent to kill the victim. However, although evidence of a motive is generally admissible, *People v Herndon*, 246 Mich App 371, 412-413; 633 NW2d 376 (2001), the proffered motive by defendant in this case is expressly prohibited as a defense. See *Kevorkian*, 248 Mich App at 442-443. There is simply no relevancy to defendant's proffered evidence of the victim's state of mind and intent to commit suicide. Therefore, the trial court did not abuse its discretion in excluding this proffered testimony.

Defendant also challenges the trial court's exclusion of similar evidence under the "rule of completeness." MRE 106. Specifically, defendant sought to introduce the testimony of the victim's benefits manager to show that the victim changed the beneficiary of her life insurance from the defendant to her daughter. Again, defendant argued that the trial court erred by excluding this testimony because it showed the victim's intent to commit suicide. As a result, defendant argues that the trial court should have declared a mistrial because the prosecution introduced aspects of the victim's mental health and suicidal state of mind during voir dire and through the video of defendant's confession. Defendant asserts that this allowed the prosecution to introduce an incomplete picture of what occurred.

The rule of completeness is memorialized in MRE 106 as follows:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

The rule is "designed to prevent unfairness which may result if a statement is taken out of context." *Moody v Pulte Homes, Inc*, 125 Mich App 739, 747; 337 NW2d 283 (1983), rev'd in part on other grounds 423 Mich 150 (1985). "The premise of the rule is that a thought or act cannot be accurately understood without considering the entire context and content in which the thought was expressed." *People v McReavy*, 436 Mich 197, 214-215; 462 NW2d 1 (1990).

However, MRE 106 only requires the introduction "of any other *part* or any other *writing* or *recorded statement* which ought in fairness to be considered contemporaneously with it." (emphasis added). This rule does not give defendant a carte blanche to inquire into every related aspect of testimony that could be gleaned from the video. See *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016) ("Because the rule of completeness only pertains to the admissibility of writings or recorded statements, and defendant's argument concerns the actual testimony . . . , it is irrelevant here."); *People v McGuffey*, 251 Mich App 155, 161; 649 NW2d 801 (2002) ("Thus, the rule of evidence would only be pertinent if defendant sought, but was denied, permission to have a complete writing or recorded statement introduced."). In light of this, the trial court did not abuse its discretion by refusing to allow inquiry into the victim's suicidal mindset beyond the video already introduced by the prosecution.

Finally, even if the trial court erred by excluding this testimony, that error did not prejudice defendant. A mistrial is appropriate when an error has prejudiced a defendant's right to a fair trial. See *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014). However, " '[a] trial court may exclude from the jury testimony concerning a defense that has not been recognized by the Legislature as a defense to the charged crime.' " *Kevorkian*, 248 Mich App at 442-443, quoting *Demers*, 195 Mich App at 207 (alteration in original).

The evidence offered by defendant would not have acted as a defense to first-degree murder. In fact, the introduction of this evidence would have prejudiced defendant by showing that defendant and the victim premediated this alleged suicide pact for an even longer period, as switching a life insurance policy may be used to infer planning or premeditation of a death. See *People v Unger*, 278 Mich App 210, 224; 749 NW2d 272 (2008) ("Evidence of insurance on the life of the deceased is admissible in a prosecution for murder as long as it can be established that the defendant was aware of the insurance policy before the killing took place."). Admittedly, it is unclear if defendant knew about the change in insurance policy. However, even if defendant did not know about the change in the victim's life insurance policy, this evidence would have only tended to show whether the victim consented, which is irrelevant.

Assuming, arguendo, that defendant's defense was that he only made the decision to kill the victim when she told him to do so that night, this evidence would show that defendant and the victim premediated her death well before the evening of decision. In light of this, defendant has failed to show that the exclusion of this evidence and the denial of his motion for a mistrial prejudiced him.

Finally, defendant challenges the sufficiency of the evidence for his conviction. In effect, defendant argues that the prosecution presented no evidence tending to show that defendant premeditated his homicide of the victim. Defendant is wrong.

"The test for determining the sufficiency of evidence in a criminal case is whether the evidence, viewed in a light most favorable to the people, would warrant a reasonable juror in finding guilt beyond a reasonable doubt." *People v Nowak*, 462 Mich 392, 399; 614 NW2d 78 (2000). "The standard of review is deferential: a reviewing court is required to draw all reasonable inference and make credibility choices in support of the jury verdict." *Id*. at 400. "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of the crime." *Id*. (quotation marks and citation omitted).

Defendant's testimony and confession indicate that defendant spent significant time contemplating the death of the victim. During his confession, defendant admitted that he killed the victim as an act of mercy in response to their difficulties. Defendant claimed that he actively discussed the suicide pact with the victim an hour before the strangulation. This testimony tends to show that defendant's act of killing was reasoned and thought out for some time before the act. Moreover, defendant admitted that his act of strangulation occurred for roughly five minutes. Our Supreme Court has previously recognized that manual strangulation on its own may be sufficient evidence of premeditation for first-degree premediated murder. See *People v Gonzalez*, 468 Mich 636, 641; 664 NW2d 159 (2003). In light of defendant's admission that the strangulation of the victim occurred for five minutes, there is sufficient evidence of defendant's premediated intent to kill the victim even if a suicide pact existed. Additionally, the forensic

pathologist explained that the victim suffered abrasions on the front of the neck and injuries in the mouth and gum line. He opined that these injuries occurred before the victim's death.[1] The evidence was sufficient to support defendant's conviction.

Affirmed.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Jane M. Beckering

---

[1]Although consent of the victim is not a defense to first-degree murder, it is worth noting that there was significant evidence that the victim did not consent. Defendant bound the victim's body with duct tape. The victim's daughter and coworkers testified that the victim was in a state of mind seemingly inconsistent with depression and suicide. For example, the victim discussed long-term plans with a variety of these witnesses, including planning her daughter's wedding and the prospect of stabilizing her financial situation with her upcoming disability payments. The implications to be drawn by this evidence and the credibility of defendant's assertions were issues appropriate for the jury to decide. See *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).