## MOODY v PULTE HOMES, INC

Docket No. 71841. Argued March 5, 1985 (Calendar No. 4).—Decided
November 13, 1985.

Marvin Moody and Annie Moody brought an action in the Oak-
land Circuit Court against Pulte Homes, Inc., and Clyde Ci-
nader, a subcontractor employed by Pulte, seeking damages for
the loss of a portion of the fingers of Marvin Moody's left hand
when it was caught in a piece of heavy equipment at the site of
a construction project of which Pulte was the developer and
general contractor. The court, John N. O'Brien, J., at the close
of the plaintiffs' proofs, directed a verdict in favor of Pulte with
regard to the plaintiffs' allegation that Marvin Moody was a
third-party beneficiary of the contract between Pulte and Ci-
nader, and subsequently entered judgment on a jury verdict of
no cause of action for the defendants. The Court of Appeals,
V. J. BRENNAN, P.J., and GRIBBS and HOEHN, JJ., affirmed. The
plaintiffs appeal, alleging that the trial court failed to give the
material substance of their theory of the case and that the trial
court abused its discretion by refusing to advise counsel before
final argument what instructions would be given to the jury
and by failing to give certain standard and special proposed
jury instructions requested by the plaintiffs (Docket No. 61759).

In an opinion by Justice RYAN, joined by Justices BRICKLEY,
CAVANAGH, BOYLE, and RILEY, the Supreme Court held:

A trial court must inform counsel prior to closing argument
regarding which, if any, of requested jury instructions will be
given. In instructing a jury, the trial court need not repeat
verbatim a party's theory of a case, but must adequately
inform the jury of the material substance of the party's claim
concerning the law applicable to the facts in evidence without
unfairly prejudicing the party in a materially substantial way.

REFERENCES FOR POINTS IN HEADNOTES

[1-4] Am Jur 2d, Trial §§ 573 et seq.
See the annotations in the ALR3d/4th Quick Index under Instruc-
tions to Jury.

[3, 4] Am Jur 2d, Appeal and Error §§ 891 et seq.
Construction of statutes and rules making mandatory the use of
pattern or uniform approved jury instructions. 49 ALR3d 128.

Failure of the trial court to give an accurate, applicable, and properly requested Standard Jury Instruction should not result automatically in reversal on appeal; reversal is required only where failure to do so would be inconsistent with substantial justice.

1. Counsel must be informed, prior to addressing a jury, of the trial court's decision regarding requested jury. instructions to enable counsel to tailor closing argument to the facts of the case in the context of the law that the court will instruct is applicable. A trial court is without discretion whether to so inform counsel. In this case, the plaintiffs' counsel requested at least ten instructions that the trial court did not give and was required to present final argument without knowing which, if any, instructions would be given, in violation of the mandate of the court rule. However, the violation was harmless error as to the plaintiffs' claim against Pulte given the lack of evidence supporting the claim.

2. A trial court, in instructing a jury, is not required to repeat verbatim a party's theory of a case, but must adequately advise the jury of the material substance of the party's claim. At a minimum, the court must include in its statement of a party's theory of the case all legally relevant facts supporting the party's theory of recovery. In this case, the court's statement of the plaintiffs' theory of recovery regarding the vicarious liability of the employer for negligence of his employee was adequate. However, it failed to adequately instruct on the plaintiffs' two other theories regarding the primary liability of defendant Cinader. Taken together, the shortcomings in the court's statement of the plaintiffs' theory of the case and the serious deficiencies in the court's substantive charge concerning the law applicable to the facts in evidence so unfairly prejudiced the plaintiff in a materially substantial way as to require reversal.

3. The trial court did not err in failing to give Standard Jury Instructions requested by the plaintiffs regarding insurance coverage and circumstantial evidence. The failure of the trial court to give the Standard Jury Instruction regarding impeachment of a party witness by a prior inconsistent statement as requested by the plaintiffs, although error, does not require reversal because the failure did not so unfairly materially prejudice the plaintiffs that failure to vacate the jury's verdict would be inconsistent with substantial justice.

4. The failure of the trial court to give certain requested special jury instructions and the inadequacy of the instructions given relating to the legal issues pleaded in the case, specifi-

cally the duties imposed by law with respect to the asserted liability of Clyde Cinader, requires reversal of the judgment of the Court of Appeals as to Clyde Cinader and remand for a new trial.

Justice LEVIN, joined by Chief Justice WILLIAMS, stated that the trial court did not err in failing to give the Standard Jury Instruction concerning impeachment of a party by a prior inconsistent statement. The instruction was not applicable. The defendants had shown that the plaintiff might have made an inconsistent statement, and it is difficult to conceive of any benefit of which the plaintiff might have been deprived from the jury not considering his prior inconsistent statement as substantive evidence.

Affirmed in part, reversed in part, and remanded.

Chief Justice WILLIAMS, concurring in part and dissenting in part, stated that the rule requiring presumption of prejudicial error and automatic reversal on appeal where a trial court omits or deviates from an applicable and accurate Standard Jury Instruction requested by counsel should not be replaced at this time by a rule which would require reversal only where failure to do so would be inconsistent with substantial justice.

125 Mich App 739; 337 NW2d 283 (1983) affirmed in part and reversed in part.

### OPINION OF THE COURT

1. TRIAL — JURY INSTRUCTIONS — CLOSING ARGUMENT.

A trial court must inform counsel prior to closing argument regarding which, if any, of requested jury instructions will be given to enable counsel to tailor closing argument to the facts of the case in the context of the law that the court will instruct is applicable (GCR 1963, 516.1, rescinded and replaced by MCR 2.516[A][4]).

2. TRIAL — JURY INSTRUCTIONS — THEORIES OF PARTIES.

In instructing a jury, the trial court need not repeat verbatim a party's theory of a case, but must adequately inform the jury of the material substance of the party's claim concerning the law applicable to the facts in evidence without unfairly prejudicing the party in a materially substantial way.

3. APPEAL — STANDARD JURY INSTRUCTIONS.

In civil actions, the failure of the trial court to give an accurate, applicable, and properly requested Standard Jury Instruction should not result in automatic reversal on appeal; a jury verdict should be vacated only where the failure to do so would be inconsistent with substantial justice (MCR 2.516, 2.613).

OPINION CONCURRING IN PART AND DISSENTING IN PART
                    BY WILLIAMS, C.J.

4. APPEAL — STANDARD JURY INSTRUCTIONS.

   *The rule requiring presumption of prejudicial error and auto-*
   *matic reversal on appeal where a trial court omits or deviates*
   *from an applicable and accurate Standard Jury Instruction*
   *requested by counsel should not be replaced at this time by a*
   *rule which would require reversal only where failure to do so*
   *would be inconsistent with substantial justice (MCR*
   *2.516[D][2]).*

*Kelman, Loria, Downing, Schneider & Simpson*
(by *Nicholas J. Rine*) for the plaintiffs.

*Sullivan, Ward & Bone, P.C.* (by *Michelle A.*
*Thomas*), for the defendants.

RYAN, J. This is an action for personal injury
damages arising out of a construction-site accident
in which the plaintiff, Marvin Moody, lost a por-
tion of the fingers of his left hand. We granted
leave to appeal in order to consider a number of
assignments of error relating to the trial court's
handling of the jury-instruction phase of the trial,
specifically, the court's refusal to advise counsel
before final argument what instructions the jury
would be given, the failure to give the "material
substance" of the plaintiffs' theories of the case,
and the refusal to give a number of proposed jury
instructions requested by the plaintiffs.

The facts of the case insofar as they are perti-
nent to our decision are as follows: Pulte Homes,
Inc., was the developer and general contractor for
a residential construction project in the City of
Troy. Defendant Clyde Cinader was employed by
Pulte Homes as a subcontractor under a written
contract with Pulte to provide backfill and grading
work at the construction site. Clyde Cinader was
not present when the plaintiff was injured, al-

though his employee and son, Scott Cinader, and another employee, Duane Joyce, were present. Marvin Moody was hired by Clyde Cinader to haul dirt at the project.

The testimony of the various witnesses differs sharply as to how Moody was injured. It appears incontrovertible, however, that the injury occurred when Moody's left hand was caught between a fan belt and a pulley while Moody was helping Scott Cinader start a bulldozer. There was sharply conflicting testimony whether Scott Cinader started the bulldozer while Moody's hand was in the area of the fan belt and pulley, or whether Moody started the engine himself by placing a piece of metal across a solenoid.

Moody and his wife filed a two-count complaint against Pulte Homes and Clyde Cinader. Count I of the complaint alleged that the work undertaken by Pulte Homes through its contractor, Clyde Cinader, was inherently dangerous and that Pulte Homes was "vicariously liable" for the negligent acts of Cinader and directly liable for its own negligence in hiring a careless and incompetent contractor, in failing to exercise control over the personnel and equipment on the project, and in failing to supervise the project. Count I also alleged that Cinader was directly negligent in hiring incompetent employees and permitting them to operate heavy equipment and in failing to adequately supervise and inspect the project. Plaintiffs also alleged that Cinader was vicariously liable for the negligence of his employee and son, Scott Cinader, in starting and operating the bulldozer without warning to the plaintiff,[1] and without permitting the plaintiff to leave the vicinity of the bulldozer.

---

[1] Use of "plaintiff" hereafter refers to Marvin Moody.

Count II of the complaint alleged that plaintiff was a third-party beneficiary of a written contract between the defendants that imposed various duties upon each of them regarding project safety and the safety of personnel on the job site. At the close of plaintiffs' proofs, the trial court granted a motion for a directed verdict as to Count II in favor of Pulte Homes. At the close of all the proofs, the jury returned a verdict of no cause of action, and the Court of Appeals affirmed. 125 Mich App 739; 337 NW2d 283 (1983).

I

In the first of the assignments of error we address, plaintiff claims to have been unfairly prejudiced by the trial court's failure to advise counsel, prior to closing arguments, which of the proposed jury instructions requested by the parties would be given and which would not.

At the close of the proofs, counsel for all the parties presented to the court their requests for jury instructions. After listening to argument concerning the proposed instructions, the court directed the attorneys to proceed with closing arguments, without indicating which of the parties' requested instructions, if any, would be given. The plaintiff objected. The following occurred:

> *The Court:* Bring in the jury Mr. Grekonich.
>
> [*Plaintiff's Counsel*]: Your Honor, may we have a ruling on the instructions?
>
> *The Court:* No. Just follow along. I'll give the instructions to the jury.
>
> (Whereupon the jury was escorted into and seated in the Courtroom)
>
> [*Plaintiff's Counsel*]: Could we approach the bench?
>
> *The Court:* Yes.

(Whereupon counsel approached the bench, off the record.)

After closing arguments, the following occurred:

(Whereupon the Court Officer was duly sworn the the [*sic*] jury excused from the Courtroom at approximately 5:45 P.M.)

*The Court:* The record should reflect that [plaintiff's counsel] asked earlier that the Court rule in advance on the various discussions or conflicts between their attitudes about the proposed jury instructions. Go ahead.

[*Plaintiff's Counsel*]: Yes, your Honor. I simply want the record to show a clear objection to the Court's failing to rule before our having to argue to the jury.

*The Court:* Yes, and I want the record to show that you are not now just bringing it up. You did bring it up earlier.

[*Plaintiff's Counsel*]: Yes, thank you your Honor. And I assume and the Court presumes there is an objection to the Court's failure to give many of the proffered instructions that were not given?

*The Court:* Yes. Let the record reflect, because this is the time, and I take it neither counsel has abandoned your request for the jury instructions that you made that were not given. Any that were not given, you have not abandoned that request.

[*Plaintiff's Counsel*]: Yes, that is correct.

[*Defense Counsel*]: That is correct.

[*Plaintiff's Counsel*]: And I object to the Court's refusal to give those that the Court did not give.

*The Court:* Likewise true?

[*Defense Counsel*]: Yes, but I'm happy.

Plaintiff claims that the court's refusal to advise counsel prior to closing arguments which, if any, of the requested jury instructions would be given is error.

We agree.

GCR 1963, 516.1[2] stated, in pertinent part:

> Request for Instructions. At or before the close of the evidence, any party may, or at any time the Court reasonably directs, the parties shall, file written requests that the Court instruct the jury on the law as set forth in the request. A copy of such requested instructions shall be served on the adverse parties in accordance with [GCR 1963,] 107. *The court shall inform counsel of its proposed action on the requests prior to their arguments to the jury, and, subject to the provision of subrule 516.3, shall instruct the jury after the arguments are completed.* [Emphasis supplied.]

The court gave no reason for its failure to comply with the court rule, and none is evident from the record.

The purpose of the rule that requires that counsel shall be informed, prior to addressing the jury, of the court's decision concerning requested instructions is, of course, to enable counsel to tailor the closing argument to the facts of the case in the context of the law that the court will advise the jury is applicable. If the court decides not to give one or more instructions requested by counsel, particularly instructions critical of a party's theory of recovery, counsel should know that before addressing the jury, not only to avoid embarrassment and the appearance of ineptness, but to avoid needless comment upon irrelevant matters, to avoid the risk of alienating jurors with what may appear, to them, to be unfair attention to inconsequential or inappropriate matters or even an attempt to confuse them. More importantly,

---

[2] The Michigan Court Rules of 1985 had not been adopted when this case was tried. MCR 2.516(A)(4) is essentially the same as GCR 1963, 516.1 and provides:

"(4.) The court shall inform the attorneys of its proposed action on the requests before their arguments to the jury."

compliance with the rule tends to preclude prejudice to a party that may follow upon any of the foregoing. See *Hunt v Deming,* 375 Mich 581, 585; 134 NW2d 662 (1965).

Here, as will be seen shortly, counsel for plaintiff requested at least ten instructions that the trial court did not give, and the court required plaintiff's counsel to argue without knowing whether or not the instructions would be given.

It is obvious from the language of Rule 516.1 that the trial court erred in violating its mandate.

Having found error in the trial court's failure to comply with Rule 516.1, we must now consider whether such error can be considered harmless. GCR 1963, 529.1. Because we reverse in part the judgment of the Court of Appeals and vacate, on other grounds, the jury's verdict of no cause of action against defendant Cinader, it is not necessary to address plaintiff's claim of unfair prejudice from the violation of Rule 516.1 with respect to plaintiff's claims against Cinader. It suffices to repeat that the rule is mandatory and does not confer upon trial courts the freedom to ignore it. *Hunt, supra,* p 584.

As stated below, however, we affirm the Court of Appeals judgment affirming the verdict of no cause of action in favor of Pulte Homes, Inc. Given the lack of evidence in support of plaintiff's claims against Pulte, we do not think that the trial court erred in failing to give to the jury plaintiff's proposed special instructions concerning Pulte's liability. (See n 19.) Since the evidence did not warrant giving these instructions, the plaintiff was not unfairly prejudiced by the trial court's failure to inform counsel that it was not going to give them.

Moreover, our refusal to reverse and remand for a new trial against Pulte Homes on the basis of the trial court's failure to comply with Rule 516.1

is not "inconsistent with substantial justice," Rule
529.1, because the lack of evidence supporting
plaintiff's claims against Pulte would have justified
the trial court's granting of a directed verdict on
all of those claims. In their complaint, plaintiffs
alleged several theories of liability against Pulte
Homes: (1) vicarious liability for the negligent acts
of its subcontractor Cinader; (2) direct liability for
negligently hiring a careless and incompetent sub-
contractor; (3) direct liability for negligently fail-
ing to exercise control and supervision over the
construction project. However, the great bulk of
the testimony and arguments presented by plain-
tiffs in this case related to the alleged negligence
of defendant Cinader, particularly his alleged vi-
carious liability for the acts of his employee, Scott
Cinader. There was a complete failure of proof
regarding plaintiff's claims of negligent hiring or
negligent supervision on the part of Pulte Homes.
As for the vicarious liability claim, the general
rule is that a general contractor is not liable for
the negligent acts of an independent subcontractor
in the absence of the right of control. *Barlow v
Krieghoff Co,* 310 Mich 195, 198; 16 NW2d 715
(1944). Plaintiff presented no evidence suggesting
that Pulte had retained the right to control the
personnel or equipment brought onto the construc-
tion site. Indeed, the contract between Pulte and
Cinader, introduced by plaintiff as a trial exhibit,
specifically stated that "[the] Subcontractor shall
be responsible for initiating, maintaining and su-
pervising all safety precautions and programs in
connection with the work."

Assessing the evidence in a light most favorable
to the plaintiffs, we are convinced that Pulte
Homes would have been entitled to a directed
verdict, as a matter of law, on all of plaintiff's
claims against it. Therefore, we find the trial

court's violation of Rule 516.1 to be harmless error as to defendant Pulte.

## II

In his next assignment of error, plaintiff asserts that the trial court erroneously refused to comply with GCR 1963, 302.4(4) and MRE 106 in failing to require Clyde Cinader's counsel to offer into evidence all or substantially all of Moody's discovery deposition after a portion of it was offered and received in evidence.[3] Specifically, plaintiff asserts that the Court of Appeals erroneously applied an abuse of discretion standard for reviewing violations of Rule 302.4(4) and MRE 106.

GCR 1963, 302.4(4) provides:

Use of Depositions. At the trial or upon the hearing of a motion or an interlocutory proceed-

[3] The Court of Appeals accurately summarized the facts relevant to this assertion of error:

"In this case, Marvin Moody testified that Scott Cinader attempted to start the bulldozer's engine by placing a metal object over the starter's solenoid. On cross-examination, a portion of Moody's deposition transcript was read, in which Moody stated that he touched the wires that started the bulldozer. Moody contended that the deposition transcript read by defense counsel contained misprints or mistakes, and that he did not testify on oral examination as having touched the wires. At this point, plaintiffs' attorney requested that the court require defendants to read other portions of Moody's deposition relevant to the ignition of the bulldozer engine. The court ruled that plaintiffs' attorney could address the issue on redirect examination. On redirect examination, Moody contended that he did not start the bulldozer. Further, plaintiffs' counsel read at length from Moody's deposition, with continued verification by Moody, in an attempt to convince the jury that the reporter had incorrectly transcribed Moody's testimony on several pages, including the page read by defense counsel during cross-examination and admitted into evidence as defendants' Exhibit A. Plaintiffs then marked and entered into evidence several pages of Moody's deposition transcript with the admitted transcript pages being marked as plaintiffs' Exhibits 5 through 8. On appeal, plaintiffs contend that the trial court committed reversible error by refusing to require defendants to introduce into evidence the portions of Moody's deposition which were relevant to starting the bulldozer engine." 125 Mich App 747-748.

ing, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any 1 of the following provisions:

* * *

(4) If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts.

MRE 106 provides:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

The Court of Appeals held:

The above rules are designed to prevent unfairness which may result if a statement is taken out of context. However, a trial court has discretion in ruling on the admissibility of a deposition, and the court's exercise of discretion will be upheld unless an abuse of discretion is manifest. *Hilyer v Hole,* 114 Mich App 38, 41; 318 NW2d 598 (1982). [125 Mich App 747.]

The Court of Appeals then concluded:

Instead of requiring the defendants to introduce into evidence the portions of Moody's deposition that were relevant to the starting of the bulldozer, the trial court stated that plaintiffs could introduce the evidence during Moody's redirect examination. Because the deposition was admitted into

evidence and brought to the jury's attention, we conclude that the trial court did not abuse its discretion by denying plaintiffs' request to have defendants introduce into evidence the deposition testimony. [125 Mich App 748.]

We think that the Court of Appeals correctly applied an abuse of discretion standard in reviewing the asserted violation of these court rules. MRE 611(a) states:

The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

It is clear that the mode and order of admitting proofs and interrogating witnesses rest within the discretion of the trial court. *Coburn v Goldberg,* 326 Mich 280, 285; 40 NW2d 150 (1949). We do not read GCR 302.4(4)[4] nor MRE 106 as eliminating that discretion. See McCormick, Evidence (3d ed), § 56, p 145. We agree with the Court of Appeals that the trial court did not abuse its discretion in this case because it allowed plaintiff's counsel to introduce into evidence the other relevant portions of Moody's deposition on redirect examination.

### III

Plaintiff also claims entitlement to reversal and a new trial because the trial court erroneously failed to advise the jury of the plaintiffs' theory of

[4] MCR 2.308, concerning the use of depositions in court proceedings, does not include the language of GCR 1963, 302.4(4). The Note to MCR 2.308 states: "That subject is now covered by MRE 106."

the case as required by GCR 1963, 516.7, and
erroneously failed to give ten proposed jury in-
structions requested by the plaintiff. Four of the
requested instructions were the following SJIS:

SJI2d 3.06  Whether Party Is Insured Is Irrelevant
SJI2d 3.10  Circumstantial Evidence
SJI2d 5.01  Impeachment of a Witness (Not a Party) by
            Prior Inconsistent Statement or Conduct
SJI2d 5.02  Impeachment of a Party by Prior Inconsis-
            tent Statement or Conduct

The other six instructions requested by plaintiff
and rejected by the court are the following:

Supplemental Proposed      Third-Party Beneficiary
Instruction No. 1          Contract Liability of
                           Defendant Cinader
Supplemental Proposed      Vicarious Liability of
Instruction No. 2          Defendant Cinader for
                           Acts of His Employees
Special Instruction No. 1  Negligence Arising out
                           of the Failure to Perform
                           a Contractual Obligation
Special Instruction No. 2  Liability of a General
                           Contractor for Hazardous
                           Work
Special Instruction No. 3  Liability of One Contracting
                           an Activity Through
                           Servants or Other Agents
[Untitled]                 Corporation Liable for
                           Acts of Agents

## A

We address first the plaintiffs' claim that the
trial court disregarded the requirements of GCR
1963, 516.7 in failing to apprise the jury of plain-
tiffs' theory of the case.

The rule provided:

.7 Statement of Issues and Theories of the Parties

(a) The court shall present to the jury the issues in the case and, if a party requests after the close of the evidence, that party's theory of the case.

(b) After the close of the evidence each party shall submit in writing to the court a statement of the issues and, if a party makes a request under subrule .7(a), his theory of the case as to each issue. The statement must be concise, be narrative in form, and set forth as issues only those disputed propositions of fact which are supported by the evidence. It must be submitted in addition to requests for instructions submitted under subrule 516.1. The theory may include those claims supported by the evidence or admitted.

(c) The court need not give the statement or theory in the form submitted if the court presents to the jury the material substance of the issues and of the theories of each party.

Acknowledging that the trial court is not required to repeat a party's theory of the case verbatim, plaintiff claims, however, that the court in this case did not give the "material substance of the issues and . . . the theories" of the plaintiff's case.

Plaintiffs' lawsuit against defendant Cinader comprises three theories: (1) Cinader's negligent failure to properly supervise his employees on the job site as required by Cinader's contract with defendant Pulte; (2) Cinader's negligence in placing a bulldozer "in extraordinarily poor condition" on the job site; (3) the negligent operation of the bulldozer by Cinader's employees causing plaintiff's injury. The first and second of the theories are claims of primary liability for acts of omission (1) or commission (2) of defendant Clyde Cinader himself. The third theory of recovery is one of vicarious liability of an employer-principal for the negligence of his employee-agent.

The complete text of the plaintiffs' three theories of liability, as submitted to the trial court, are reproduced below on the left, and the trial court's entire statement of the plaintiffs' theories against defendant Cinader is reproduced below on the right.[5]

It is the claim of the Plaintiff that, although Defendant, Cinader's contract called for him to give his personal attention to the work and to maintain a competent supervisor on the job site, he failed to do so, leaving the work in the hands of the two teenagers.

Plaintiffs also contend that the bulldozer in question was in extremely poor con-

It is the Plaintiff's claim that he was asked to assist in the starting of Defendant Cinader's bulldozer, and while checking the fan belt Defendant Cinader's son turned the engine over, and that cut off one finger and seriously injured another one, and that the conduct of Cinader's son was negligent and that negligence resulted in the injury to his hand . . . .

---

[5] The court further stated:

"Plaintiff further claims the defendant Pulte should have been out there on the job site, either supervising or controlling the conduct of the Cinaders in such a fashion that the injury could not have occurred, and that they breached a duty in not supervising and controlling, and because of that, they are also liable for the injury that has been suffered by the plaintiff."

Plaintiffs do not assert as error the trial court's failure to give the material substance of their negligence claim against defendant Pulte. As stated, the trial court had directed a verdict for Pulte on Count II (Breach of Third-Party Beneficiary Contract) at the close of plaintiffs' proofs. At that time, the court took under advisement defense counsel's motion for a directed verdict on Pulte's behalf as to Count I (Negligence). The trial court, however, never ruled on the matter but, instead, submitted one of plaintiffs' three negligence theories against Pulte to the jury.

While the court's statement referred to only one of plaintiff's three theories of recovery against Pulte, any possible error is harmless in light of our previous conclusion that the evidence presented at trial did not support any of these theories. We note that GCR 1963, 516.7(b) states that "[a party's] theory [of the case] may include those claims *supported by the evidence* or admitted." (Emphasis added.)

dition and should have
never been allowed on the
job site by either Defend-
ant Cinader or Defendant
Pulte Homes, Inc.

It is the claim of the Plain-
tiff that he was asked to
assist one of the teenage
employees of Defendant,
Cinader, in starting the
bulldozer and his hand
was injured when that
teenage employee at-
tempted to start the equip-
ment without checking to
be sure that Marvin
Moody was clear.

*Factually,* the essence of plaintiff's theories of
recovery against defendant Cinader is that the
plaintiff was injured because of Cinader's careless-
ness in the fashion in which he conducted his
affairs as a subcontractor at the construction site,
specifically as regards the operation by his em-
ployee-son of the bulldozer Cinader brought to the
job site for use in completing his work as a subcon-
tractor.

*Legally,* however, plaintiffs indentified three sep-
arate and distinct legal duties assertedly breached
by Cinader, proof of any one of which, if shown to
have proximately resulted in Moody's injury, war-
ranted recovery. Each was an analytical route
plaintiff invited the jury to follow to reach the
conclusion that Cinader was responsible for
Moody's injury.

It was not necessary at that threshold part of
the instructions to the jury that the court fully
delineate the principles of tort or contract law and
the legal analysis that underlay the plaintiff's

claim. The detail concerning the legal character of the duties owed to the plaintiff, the analytical distinction between the respective duties, and the jurors' duties with respect to each theory proved, were matters to be covered in the more substantive portion of the court's charge when advising the jurors as to the law governing the case.

It is our view, however, that Rule 516.7 requires the trial court to include in its statement of a party's theory of the case, at a minimum, all legally relevant facts to that party's theories of recovery. When the trial court told the jury that the plaintiff's theory was that the plaintiff was injured because "while [he was] checking the fan belt[,] defendant Cinader's son turned the engine over, and that cut off one finger and seriously injured another one, and that the conduct of Cinader's son was negligent and that negligence resulted in the injury to [Moody's] hand," the court had adequately stated the legally relevant facts pertaining to the plaintiff's third theory of recovery, that of vicarious liability of an employer-principal for the negligence of his employee-agent. However, plaintiff alleged two other theories of primary liability for the allegedly negligent acts of Clyde Cinader himself, and the trial court's statement omitted the legally relevant facts pertaining to those theories: (a) that Cinader had left the job site under the supervision of his teenaged son (relevant to plaintiff's first theory), and (b) that Cinader allowed the use of a bulldozer on the job site which was in poor condition (relevant to plaintiff's second theory). Both of these were "disputed propositions of fact which [were] supported by the evidence," Rule 516.7(b), and therefore would have been properly included in the trial court's statement of plaintiff's case. When a trial court has stated only the facts which are legally relevant to

one of a party's theories of recovery, it has not adequately complied with GCR 1963, 516.7. Therefore, we hold that the trial court erred in failing to comply with the mandate of Rule 516.7.

We are unable to conclude that this error was harmless in view of the fact that, as discussed below, the court's instructions on the applicable law were also seriously deficient. Taken together, the shortcomings in the court's statement of plaintiff's theory of the case, and the serious deficiencies in the court's substantive charge to the jury, so unfairly prejudiced the appellants in a materially substantial way that we are required to reverse as to defendant Cinader.

### B

It is asserted that, in addition to his failure to adequately describe the plaintiffs' theories of recovery, the trial judge erroneously failed to give ten jury instructions proposed by plaintiff. The first four were standard jury instructions (SJI2d), and the last six were special instructions drafted by plaintiff's trial counsel and assertedly tailored to the plaintiffs' theories of recovery and the evidence in the case. It must be remembered, of course, that none of the counsel in the case had any way of knowing, before the jury was instructed, which of the requested instructions would be given and which would not.

### 1

Plaintiff first complains that the court erred in failing to give SJI2d 3.06, concerning insurance coverage, which reads:

Whether a party is insured has no bearing whatever on any issue that you must decide. You must refrain from any inference, speculation, or discussion about insurance.

After retiring to consider their verdict, the jurors interrupted their deliberations, returned to the courtroom, and submitted a question to the court. The record shows what occurred:

*The Court:* The record should reflect the following question from the jury.

"Did Mr. Moody have bodily injury insurance to cover on site accidents doing [*sic*] his May 27, 1977 job?"

Gentlemen your responses, or your suggested responses to that question?

[*Plaintiff's Counsel*]: Your Honor, I think that the only proper response would be SJI 2nd, 3.06, the instruction informing the jury that insurance is irrelevant.

*The Court:* I can't hear you.

[*Plaintiff's Counsel*]: Informing the jury that insurance is irrelevant to the case.

[*Defense Counsel*]: I think under the circumstances I have to agree.

*The Court:* You can bring in the jury Mr. Grekonich.

(Whereupon the jury was escorted into the Courtroom)

*The Court:* Ladies and gentlemen I have been delivered a question. And I don't want to hurt anybody's feelings, but I understand the question, and I don't know, we don't know, and it's none of our business, in short I guess.

Let me read the question for the purposes of our record.

"Did Mr. Moody have bodily injury insurance to cover on site accidents doing his May 27, 1977 job."

That is the question. Whether he did or not, as I indicated, isn't any of our business. Our concern here is the issue of negligence on either party's side and contributory negligence if any, and what injury occurred and what damages were suffered.

I mean it is a normal, and perhaps human

reaction to be concerned about that, but that has nothing to do with whether or not somebody's at fault, or whether or not they suffered an injury or whether or not that injury is compensable in dollars and cents.

*Juror Number Six:* Your Honor could we make an explanation of our question?

*The Court:* No, you don't have to, and don't apologize for it.

*Juror Number Six:* No, I mean why we want an answer.

*The Court:* Okay.

*Juror Number Six:* We read the contract by the sub-contractor, that he signed, and in that contract it is specifically stated that it was his duty to see to it that a third, that a sub-contractor to him had full insurance coverage.

*The Court:* Okay.

*Juror Number Six:* And, so we feel that if he did not do that, then he was negligent of not doing that and of not completing that contract. That was our feeling.

*The Court:* Okay. Now, in none of the theories, nor in the case that we have given to you, has he been sued for not conforming to that part of the contract.

*Juror Number Six:* I see.

*The Court:* So, again I tell you I don't know, and we won't and we won't care until somebody sues him for that.

*Juror Number Six:* That helps.

*The Court:* Well, I can see, you go romping through there and you say well, we've got the contract and I think that should be our concern.

The standard jury instruction specifically with regard to insurance says that whether a party is insured has no bearing whatever on any issue that you have to decide, and you should refrain from any inference or speculation or discussion about insurance.

You know, you might get involved as jurors some time in a suit where somebody is either

suing on a policy or because somebody else didn't buy one, and well, that would be what you have in that case. But it is not involved here.

It is evident from the colloquy between the court and Juror Number Six that had the trial judge merely read SJI2d 3.06 he would not have addressed the jurors' real concerns. The jurors were troubled whether defendant Cinader was liable, on a breach of contract theory, for failure to comply with a term of the construction contract—the duty of the subcontractor to "see to it that a third, that a subcontractor to him had full insurance coverage."[6] The court correctly disabused the jurors of the idea that such a theory was before them. His handling of the jury question was brief, direct, responsive, and accurate. SJI2d 3.06 would not, standing alone, have adequately responded to the jurors' inquiry. The court did not err.

## 2

Plaintiff next complains that the court failed to give requested SJI2d 3.10 concerning Circumstantial Evidence.

The instruction reads:

It is not necessary that every fact be proven directly by a witness or an exhibit. A fact may be proven indirectly by other facts or circumstances, from which it usually and reasonably follows according to the common experience and observation of mankind. This is called circumstantial evidence, which you are to consider along with other evidence in the case.

[6] While it is speculation at best, perhaps the jurors' confusion could have been avoided had the trial court more explicitly advised the jury at the outset of the instructions concerning the three legal theories upon which the plaintiffs' claim was brought which would not have included the insurance coverage question.

Neither in his brief to this Court nor in oral argument has plaintiff suggested what circumstantial evidence was introduced in this case to warrant the requested instruction. We have carefully examined the record and we can find none.[7]

On the record before us, the court was not obligated to instruct on circumstantial evidence.

### 3

Next, the plaintiff complains of prejudice resulting from the court's failure to give requested SJI2d 5.01 and 5.02. At the time of trial, SJI2d 5.01 read:

> In deciding whether you should believe a witness, you may consider the fact that at some earlier time [he/or/she] [said/did] something that does not agree with what [he/or/she] testified to here on an important point. What [he/or/she] said earlier may be considered only in deciding whether you should believe [him/or/her] and may not be considered as proof of the facts in [his/or/her] earlier statement (unless [he/or/she] testified that [his/or/her] earlier statement was true, in which event it may be considered as proof of the facts in the statement).

By its terms, the instruction is designed to emphasize that any prior inconsistent statement which may have been used to impeach the veracity of a witness may be considered by the jury only for the significance it has in reflecting upon the credibility of the witness for having spoken inconsistently at different times on the same important

---

[7] It is arguable that in every case in which witnesses testify there is necessarily some circumstantial evidence, if only concerning the veracity of the witnesses. If that is what appellants have in mind—and we are left to guess at the matter because no suggestion is made that any circumstantial evidence was introduced in the case—we think the trial court's instructions to the jury concerning the general credibility of witnesses, SJI2d 4.01, 4.07, adequately covered the subject.

point. The unstated thrust of the instruction is that the prior inconsistent statement of the non-party witness is ordinarily inadmissible hearsay and may not be considered by the jury for the truth of the content of the prior statement.

The only non-party witnesses who testified at the trial were Scott Cinader and Duane Joyce, Cinader's employees. However, plaintiff does not invite our attention to any evidence in the record of any effort to impeach the credibility of either non-party witness with the use of a prior inconsistent statement. Consequently, there was no necessity for the court to give the requested instruction, and its refusal to do so was not error.

More troublesome is the court's failure to give requested SJI2d 5.02 concerning impeachment of a party witness by a prior inconsistent statement. At the time of trial, that instruction read:

> In deciding whether you should believe a party who has testified, you may consider that at some earlier time [he/or/she] [said/did] something that does not agree with what [he/or/she] testified to here on an important point. Because [he/or/she] is a party, what [he/or/she] [said/did] earlier may be considered not only in deciding whether you should believe [him/or/her], but also may be considered as evidence of the facts in this case.

One of the principal purposes of SJI2d 5.02 was to distinguish between purposes for which the jury may consider a prior inconsistent statement by a party witness and a prior inconsistent statement of a non-party witness. While the latter may be considered only as bearing on the veracity of the witness impeached, the former, because it may be the admission of a party opponent, is "not hearsay" under MRE 801(d)(2)(A) and thus may be considered by the jury both as bearing on the

witness' veracity and for the truth of the content of the statement. See "Note on Use," SJI2d 5.02.

Upon cross-examination, Moody was confronted with two previous statements he had made: his pretrial discovery deposition and a lengthy handwritten statement made shortly after the accident. Defense counsel used both statements in an effort to impeach Moody's veracity by showing that his testimony at trial was at variance, in different particulars, with both the discovery deposition and the handwritten statement.

The deposition material was of questionable inconsistency. At one place in the deposition, Moody is shown to have stated that he, rather than Scott Cinader, had touched the wires that started the bulldozer. At trial, Moody steadfastly insisted that he had not touched the wires, and that the deposition text which read, "*I* touched the wires," was a typographical error or had been taken down or transcribed incorrectly by the stenographer, and should have read, "*He* touched the wires." Plaintiffs' counsel strenuously objected to the use of the deposition as a prior inconsistent statement, charging that the text of the deposition was in error. He later introduced other parts of the deposition which tended to show that Moody had all along maintained that he had not touched the wires, strongly suggesting that there indeed had been an error in the deposition transcript. Nevertheless, the point was in dispute and the effort at impeachment was before the jury.

Defense counsel unquestionably succeeded in showing that Moody's trial testimony was inconsistent with a portion of his handwritten pretrial statement in which he declared that Scott Cinader may not have heard Moody tell Cinader not to start the engine of the bulldozer. At trial, Moody stated that he was "positive he heard me." In the

handwritten statement, plaintiff said: "I told [Scott Cinader] not to start the engine, as I had found the trouble but he did start, and maybe he did not hear me . . . ." Moody attempted to explain the apparent inconsistency by stating: "Maybe I could have made a mistake there, saying that he didn't hear me," and "I'm positive he did hear me. When this question was asked of me, I just don't know directly what was said."

Upon redirect examination, plaintiffs' counsel offered the entire handwritten statement in evidence. It was received without objection.[8]

Plainly, Moody was shown to have made at least one prior inconsistent statement, and possibly two. Ordinarily, in such circumstances, the impeaching party, not the party attacked, will insist that SJI2d 5.02 or its equivalent be given, not only because it calls the jury's attention to the fact that the witness' veracity has been impeached, but because it advises the jury that the out-of-court prior inconsistent statement may be considered for the truth of its content. That is so, as we have said, because it is an admission of a party opponent and "not hearsay" under MRE 801(d)(2)(A). Here, however, counsel for the party witness who was impeached offered the prior inconsistent statement without stating the purpose for which he wished it to be considered by the jury. No matter by whom the handwritten statement was offered, once the statement was received in evidence, SJI2d 5.02 was applicable.[9]

---

[8] We express no opinion about the admissibility of plaintiff's out-of-court statement offered by plaintiff. No limiting instruction concerning its use was sought or given, and no objection was registered to its receipt in evidence.

[9] It may, of course, have been plaintiffs' strategy to invite the jury to consider the entire two-page detailed statement in order to show how substantially consistent, in important matters, Moody's trial testimony was with his very early pretrial statement, thus emphasiz-

Despite the request by plaintiffs' counsel, the trial court declined to give the requested instruction. Plaintiff claims the failure to do so violated the rule of *Javis v Ypsilanti Bd of Ed,* 393 Mich 689; 227 NW2d 543 (1975), since the instruction was accurate, applicable, and properly requested by plaintiffs' counsel.[10]

The Court of Appeals stated that the trial court did not err in failing to give SJI2d 5.02 because the prior inconsistent statement had been admitted in evidence, and because the court's general charge on credibility of the witness sufficiently covered the matter. The Court of Appeals added:

> The determination of whether the requested instruction is applicable and accurate is within the trial court's discretion. *Zmija v Baron,* 119 Mich App 524, 540; 326 NW2d 908 (1982). Here we find no abuse of discretion. [125 Mich App 754.]

We think the trial court erred in failing to give requested SJI2d 5.02.

Ordinarily, a trial court's discretion to determine whether to give a requested standard jury instruction does not include the authority to decline to give the instruction when it is plainly accurate, applicable, and is properly requested by a party. GCR 1963, 516.6(2).

As we said today in *Johnson v Corbet,* 423 Mich 304, 326-327; 377 NW2d 713 (1985):

---

ing the relative insignificance of the one inconsistency that was highlighted.

[10] In *Javis, supra,* pp 702-703, we held:

"Where there is an omission of, or deviation from an applicable and accurate SJI [Standard Jury Instruction], prejudicial error will be presumed; provided that the erroneously omitted SJI was properly requested at trial; and, provided that in those cases where error is charged as a result of a deviation from a SJI, said deviation was brought to the attention of the trial court prior to the commencement of jury deliberations."

However, it remains the duty of the trial court, as historically it has been, to determine the subject matter of the instructions to be given to the jury, and that includes the duty to determine the applicability of the particular SJI requested by counsel. *Socha* [*v Passino,* 405 Mich 458, 467; 275 NW2d 243 (1979)]. That duty cannot be delegated to counsel. Merely because the evidence in a case may include the subject matter of an SJI, it does not mean that the court, upon request of counsel, is automatically required to read every SJI which might tangentially touch on the subject matter. The trial court's duty to determine the "applicability," under MCR 2.516, of a requested SJI runs deeper than that and calls for the exercise of discretion. It is conceivable, for example, that a given SJI would accurately state the law and be applicable, in the theoretical sense that the evidence in a case included reference to the subject matter of that SJI, but that a wise and experienced trial judge, in the exercise of informed discretion, would determine that reading the SJI would confuse the jurors or unnecessarily distract them from the material issues in the case, or extend the jury instruction process out of all proportion to the educational benefit to the jurors and fairness to the litigants, or unduly emphasize a potentially prejudicial aspect of the evidence, or simply add nothing to an otherwise balanced and fair jury charge nor enhance the ability of the jurors to decide the case intelligently, fairly, and impartially. This, of course, is a way of saying that it is for the trial court to determine when the SJI are applicable, not in an abstract or theoretical sense, but in the context of the "personality" of the particular case on trial, and with due regard for the adversaries' theories of the case and of counsel's legitimate desire to structure jury argument around anticipated jury instructions.

But even in cases in which the requested SJI was unquestionably applicable, as here, there remains the appellate duty to determine whether the error

in omitting the SJI was so prejudicial as to require reversal.

Under *Javis,* and until today, the trial court's failure to give SJI2d 5.02 in this case would have been error requiring reversal without regard to any unfair prejudice to the complaining party. However, under the modification of the *Javis* rule we announced today in *Johnson,* we must decide whether the failure to give SJI2d 5.02 so unfairly prejudiced the plaintiff that failure to vacate the jury's verdict would be "inconsistent with substantial justice."

We think it did not. In fact, the particular departure from the mandate of GCR 1963, 516.6(2) involved here is an excellent example of the need for easing the sweep of the prophylactic presumption of error rule of *Javis.* Here, the prior inconsistent statements related to relatively insignificant points, matters that on the whole record were unlikely to influence the jury concerning the Moodys' general credibility.

With the introduction of substantial portions of the discovery deposition and the explanatory testimony of Moody, plaintiffs' counsel persuasively demonstrated that the purported prior inconsistent deposition statement by Moody that read, "*I* touched the wires," was either a typographical error, or had been taken down incorrectly in the first instance, and should have read, "*He* touched the wires." Nowhere else in the evidence is there any suggestion that Moody had "touched the wires."

Similarly, we think the impeachment of Moody by the use of the prior handwritten statement was, in the context of the whole trial, a matter of little or no significance to the jury. Recall, that the trial testimony of Moody which was attacked was his statement on cross-examination that he was "posi-

tive" that Scott Cinader had heard him caution Cinader not to start the engine:

> *Question [by defense counsel]*: Mr. Moody, how do you know Scott Cinader heard you say, don't start the engine?
> *Answer:* As clear and as loud as my voice is, I'm positive he heard me.

The impeaching prior inconsistent statement upon which defense counsel relied was Moody's pretrial statement as follows:

> I told him not to start the engine, as I had found the trouble, but he did start, and maybe he did not hear me.

Although the question whether Moody had warned Scott Cinader not to start the engine might have had importance on the question of Moody's possible comparative negligence and Scott Cinader's negligence, the testimony sought to be impeached could hardly be determinative of the matter. Despite Moody's trial testimony, the fact is that he could not have been "positive" that Cinader heard his warning. He could only have had an opinion upon the matter. Whether Cinader heard him or not is a matter which could not have been within Moody's personal knowledge, particularly since Cinader made no acknowledgment of having heard the warning. Similarly, the prior handwritten statement that "maybe [Cinader] did not hear me" is wholly speculative and therefore equally lacking in probativeness about whether the warning had been heard.

While the court erred in failing to instruct the jury that it was entitled to consider Moody's prior inconsistent statements for their truth, the court's failure to do so was harmless, given the relatively

innocuous subject matter of the asserted inconsistencies and the fact that the court fully and accurately instructed the jury that the credibility of the witness was in dispute and that the jury was obligated to consider all the evidence in the case in order to determine who to believe relative to disputed points in the evidence.[11] We conclude that the court's failure to give SJI2d 5.02, although error, did not materially prejudice the plaintiff.[12]

## IV

We address finally the plaintiff's claim that he suffered material prejudice because of the court's refusal to give several requested special jury instructions. Those instructions, to repeat, are plaintiffs' Supplemental Proposed Instruction No. 1

---

[11] The court's instructions in that connection were as follows:

"In determining whether any fact has been proved, you should consider all of the evidence that bears on that fact, regardless of which party may have produced the evidence.

"You have a right to consider all of the evidence in the light of your own general knowledge and experience in the affairs of life and take into account whether any particular evidence seems reasonable and probable. However, if you had personal knowledge of a particular fact, in this case, such knowledge could not be used as evidence. That is why you will recall I was inquiring at the beginning of the case if any of you had personal knowledge of the case or any of the parties involved, and that sort of thing.

"As to the credibility of witnesses, you are the sole judges of the facts in the case and you have to determine which witnesses you will believe and what weight you will give that testimony. In doing so, you may take into account the witnesses' ability and opportunity to observe, the witnesses' memory and manner while testifying, any interest or bias or prejudice a witness might have, and the reasonableness of the testimony considered in light of all of the other evidence in the case."

[12] As further support for our holding that plaintiff was not materially prejudiced by the court's failure to give SJI2d 5.02, we note that SJI2d 5.02 informs the jury that it may consider a party's prior *inconsistent* statements as substantive evidence. It does not state that the jury may also consider a party's prior *consistent* statements as substantive evidence. It is difficult to conceive of any benefit of which the plaintiff might have been deprived from the jury not considering his prior *inconsistent* statements as substantive evidence.

concerning Cinader's liability to Moody as a third-party beneficiary under the contract between Cinader and Pulte Homes,[13] plaintiffs' Supplemental Proposed Instruction No. 2 concerning the vicarious liability of Cinader for the acts of his employees,[14] plaintiffs' Special Instruction No. 1 concerning duties owed to third persons arising out of a contractual relationship,[15] plaintiffs' Special Instruction No. 2 concerning the liability of Pulte for the negligence of its subcontractor,[16] plaintiffs' Spe-

[13] "A contract between the Defendant Pulte Homes, Inc. and Defendant Clyde Cinader has been placed into evidence in this case. In that contract Defendant Clyde Cinader accepted certain specified duties pertaining to the work involved in this case.

"Your verdict will be for the Plaintiff if you find that the Defendant failed to perform any duty imposed by the contract for the benefit of persons on the job site, and that failure to perform a contractual duty was a proximate cause of the injury to Marvin Moody."

[14] "It is further undisputed in this case that Scott Cinader and Duane Joyce were employees of the Defendant Clyde Cinader who were acting in the course of their employment at all times relevant to this case. Defendant Clyde Cinader is, therefore, liable for the acts of those persons."

[15] " 'Actionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law. The duty may arise generally by operation of law under application of the basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others. This rule of the common law arises out of the concept that every person is under the general duty to so act, or to use that which he controls as not to injure another. [Citation omitted.]

" 'Such duty of care may be a specific duty owing to the Plaintiff by a Defendant, or it may be a general one owed by a Defendant to the public, of which the Plaintiff is a part. Moreover, while this duty of care, as an essential element of actionable negligence, arises by operation of law, it may and frequently does arise out of a contractual relationship, the reason being that accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done. *Clark v Dalman,* 379 Mich 251, 260-261 [150 NW2d 755] (1967).'

"Each defendant was bound by law to see that the work which is part of its contract it was bound to do was not done in a negligent manner. *Wight v Christman Co,* 244 Mich 208, 215 [221 NW 314] (1928)."

[16] "A principal employing a contractor must use care to employ a

cial Instruction No. 3 concerning the vicarious
liability of "[o]ne conducting an activity through
servants or other agents",[17] and plaintiffs' proposed
instruction regarding the liability of Pulte Homes,
Inc., for the acts of its agents and employees.[18]
Four of these requested Special Instructions were
concerned with the potential liability of Clyde
Cinader.[19]

---

competent contractor to do work which will involve a risk of physical
harm unless it is skillfully and carefully done.

"A careful contractor is one with competent supervision, proper
equipment, and an accident prevention program comparable to that
of a reasonably prudent contractor in similar circumstances. The
more hazardous the work, the greater the duty of continuing surveil-
lance.

"Certain factors are important: (1) the danger of which others will
be exposed if the contractor's work is not properly done; (2) the
character of the work to be done—whether the work lies within the
competence of the average man or is work which can be properly
done only by persons possessing special skills and training; (3) the
existence of a relation between the parties of protecting the other.

"A company which knows or should know in the exercise of
ordinary care that its contractor is using unsafe equipment or meth-
ods has a duty to see that safe equipment and methods are used."

[17] "One conducting an activity through servants or other agents is
subject to liability for harm resulting from his conduct if he is
negligent:

"a. in giving improper or ambiguous orders or failing to make
proper regulations;
                                    or
"b. in the employment of improper persons or instrumentalities in
work involving risk or harm to others;
                                    or
"c. in the supervision of the activity;
                                    or
"d. in permitting, or failing to prevent, negligent conduct of per-
sons, whether or not his servants or agents, upon premises or
with instrumentalities under his control."

[18] "Corporation Liable for Acts of Agents

"The defendant Pulte Homes, Inc. in this case is a corporation and,
as such, is capable of acting only through its agents and employees. It
is undisputed in this case that Robert Richardson, Robert Wagner and
William Magnuson were employees of the defendant Pulte Homes,
Inc. who were acting in the course of employment. Defendant Pulte
Homes, Inc. is, therefore liable for the acts of those persons."

[19] The remaining two instructions (see ns 16 and 18) were concerned
with the potential liability of Pulte Homes, Inc. As discussed above,

The special significance of those instructions that related to Cinader is that Cinader was not present at the construction site at the time of the accident and had no direct involvement in the activities which ultimately resulted in the plaintiff's injury. On the basis of the plaintiffs' theory of the case, the only possible way he could recover against Cinader was if he could establish, by a preponderance of the evidence: (1) Cinader's direct liability for failing to supervise the activities of his employees on the job site, or (2) his direct liability for placing a "dangerous" bulldozer on the job site for use by his employees, or (3) his vicarious liability as an employer responsible for the negligent acts of his employees performed in the scope of their employment.

Those theories could not have been on the jurors' minds, however, because the trial court declined to articulate the plaintiffs' theories in the language suggested by the plaintiff, or in any other language, but advised the jurors instead that "[i]t is the Plaintiff's claim that he was asked to assist in the starting of Defendant Cinader's bulldozer and, while checking the fan belt, Defendant

the trial court had directed a verdict for Pulte on Count II of plaintiffs' complaint (Breach of Third-Party Beneficiary Contract). In stating plaintiffs' theories of the case, the trial court instructed the jury that "[p]laintiff further claims the defendant Pulte should have been out there on the job site, either supervising or controlling the conduct of the Cinaders in such a fashion that the injury could not have occurred . . . ."

Virtually none of the trial testimony related to the alleged negligence of Pulte Homes. Plaintiffs did not call any of the corporate defendant's employees or agents as witnesses. Plaintiffs' counsel made only a brief reference to Pulte Homes in his closing argument. In light of the absence of evidence regarding Pulte's negligence, we do not find the trial court's failure to give plaintiffs' two proposed instructions concerning Pulte to be error requiring reversal. See *Jaworski v Great Scott Supermarkets, Inc,* 403 Mich 689, 697; 272 NW2d 518 (1978); *Susich v Michigan Consolidated Gas Co,* 292 Mich 612, 616; 291 NW 26 (1940); *Curth v New York Life Ins Co,* 274 Mich 513, 525; 265 NW 749 (1936).

Cinader's son turned the engine over, and [injured plaintiff] and that the conduct of Cinader's son was negligent . . . ." Nothing in the court's abbreviated statement of the plaintiffs' theories of liability against Cinader suggested that it was plaintiff's claim that Cinader was liable because of his failure to supervise the work of his employee-son, or because he placed a dangerous bulldozer on a job site, or because the law imposes vicarious liability upon an employer for the negligent acts of his employee committed within the course of employment. Moreover, nothing in the trial court's substantive instructions to the jury concerning the law applicable to this case suggested, even remotely, that the asserted negligence of Scott Cinader was attributable to his father-employer Clyde Cinader, or that recovery could be had against Clyde Cinader for his primary negligence in failing to supervise the job or for negligently placing a dangerous instrumentality on the job site.

Even viewed in a light most favorable to the defendant, the most an ordinarily attentive juror could have derived from the court's instructions was that a verdict could be returned for plaintiff if the jurors found that the plaintiff was injured because the defendant's "son was negligent and that negligence resulted in the injury" to the plaintiff. But against whom such verdict could be returned was not made clear. Even that statement was described by the trial court as the "plaintiffs' claim" and not a verdict option available to the jury on the basis of a duty imposed by law upon the defendant and the evidence in the case. Immediately following that statement, the court declared that the "[p]laintiff further claims that defendant Pulte should have been out there on the job site, either supervising or controlling the con-

duct of the Cinaders . . . ." No such claim of
failure to supervise against Cinader was recog-
nized by the trial court, and the jury was not
instructed to consider such failure as a means of
holding Cinader liable. Moreover, as we have said,
the vicarious liability of Cinader as an employer
responsible for the negligent acts of his employee
was never addressed by the court either as a
theory pleaded by the plaintiff or as an issue
before the jury to be resolved. While lawyers and
judges may have had no trouble interpreting the
evidence and the court's instructions as implicitly
recognizing the possible vicarious liability of Ci-
nader as an employer, jurors untrained in the law
of torts and agency cannot be expected to have
inferred it.

In addition, of course, there was no mention in
the trial court's instructions of the jury's duty to
consider whether Cinader was liable to the plain-
tiff under a third-party beneficiary contract theory
of liability arising from the contract between the
general contractor, Pulte Homes, and the subcon-
tractor, Cinader.[20]

The court's failure to instruct the jury in detail
concerning the plaintiffs' vicarious liability theory
against Clyde Cinader as employer of Scott Ci-
nader was not ameliorated by the verdict form
given to the jurors and the six questions contained
in the verdict form. The only special questions in
the verdict form having reference to Cinader at all
read:

Question Number 1:     Was the defendant Pulte
                       negligent?
                       Answer: Yes or no.

---

[20] Although defense counsel moved for a directed verdict in favor of
Cinader on the plaintiffs' third-party beneficiary contract theory of
liability, the trial court never made a ruling on this motion. There-
fore, in light of the fact that the written contract between Cinader
and Pulte was admitted into evidence, this theory of liability against
Cinader was a matter upon which the jury should have been in-
structed.

Question Number (a):      Was the defendant Cinader negligent?
Answer: Yes or no.

Given the fact that most of the evidence in the case bearing on the question of active negligence related to the acts or omissions of Scott Cinader and very little related to the acts or omissions of Clyde Cinader, the jurors could not have been expected to know, without instructions from the court, that Clyde Cinader could be liable under the legal fiction of vicarious liability or directly liable upon proof that he failed to supervise his employees on the job site and provided a dangerous bulldozer for use in their work.

We conclude that the jury was inadequately instructed concerning the legal issues pleaded in the case and raised by the evidence, specifically the duties imposed by law with respect to the asserted liability of Cinader.

For the foregoing reasons, we reverse the judgment of the Court of Appeals as to defendant Cinader, affirm the judgment as to defendant Pulte Homes, and remand the matter to the circuit court for a new trial.

BRICKLEY, CAVANAGH, BOYLE, and RILEY, JJ., concurred with RYAN, J.

LEVIN, J. I concur in the opinion of the Court except Part III(B)(3) respecting the failure to give SJI2d 5.02 concerning the impeachment of a party by a prior inconsistent statement.

For the reasons set forth in n 12 of the opinion of the Court, the instruction was not "applicable" and the judge did not err in failing to give the instruction. Defendants had shown that plaintiff

might have made an inconsistent statement. "It is," in the words of the opinion of the Court, "difficult to conceive of any benefit of which the plaintiff might have been deprived from the jury not considering his prior *inconsistent* statements as substantive evidence." (Emphasis in original.)

Williams, C.J., concurred with Levin, J.

Williams, C.J. (*concurring in part and dissenting in part*). I concur fully in the result and the rationale of the excellent and eloquent opinion of my brother Ryan in this matter except for his decision in the latter paragraphs of III(B)(3), relative to *Javis v Ypsilanti Bd of Ed,* 393 Mich 689; 227 NW2d 543 (1975). We agree as to the applicability of *Javis* to this case, but we disagree as to the value of continuing the prophylactic "presumption of prejudice" rule of *Javis.* I support it. He does not. See our respective opinions in *Johnson v Corbet,* 423 Mich 304; 377 NW2d 713 (1985), decided today.