*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 24, 2021

Plaintiff-Appellee,

v

No. 351798
Ingham Circuit Court
LC No. 18-001095-FC

DEJHAN QUENZELLE SANDERS,

Defendant-Appellant.

Before: JANSEN, P.J., and M.J. KELLY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant, Dejhan Quenzelle Sanders, appeals by right his convictions, following a jury trial, of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(c) (sexual penetration during a felony); first-degree home invasion, MCL 750.110a(2); resisting arrest, MCL 750.81d(1); and aggravated stalking, MCL 750.411i(2)(b) (stalking in violation of a court order). The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to serve 20 to 40 years in prison for CSC-I, 20 to 30 years in prison for home invasion, 2 to 3 years in prison for resisting arrest, and 45 to 90 months in prison for aggravated stalking. We affirm defendant's convictions and sentences.

## I. FACTUAL BACKGROUND

Defendant's convictions resulted from a sexual assault he committed in December 2018. The victim testified that she and defendant had been in a relationship for seven years and had three children in common. She stated that the relationship became violent, and most of the abuse progressed in the year before the sexual assaults. In January 2017, defendant broke into the victim's home, following which she obtained a personal protection order. Defendant subsequently broke into her home multiple times. In July 2018, the victim called the police as a result of an assault. Defendant testified that he pleaded guilty to domestic violence. Both defendant and his probation officer testified that, in November 2018, the terms of defendant's probation order prohibited contact with the victim.

In November 2018, the victim called the police after defendant broke in and began hitting her. The victim told a police officer that she thought she had locked the door, but defendant

-1-

appeared in her apartment, yelling and angry. He asked why she had called the police and began hitting her in the head and face. The victim identified two photographs of her that were taken in November 2018. The police officer testified that a medic examined the victim, but she did not want to go to the hospital.

When asked about the incident on December 6, 2018, the victim stated that she was having trouble remembering. The victim testified, "I remember him coming in—I think he raped me or something like that. I can't—." The victim confirmed that defendant had put his penis in her vagina, and she stated, "I think I said no repeatedly." The victim then requested a break, which the trial court granted, noting that the victim looked "pretty sick" and wondering if 911 should be called. The trial court sent someone to check on the victim and, in the meantime, took another witness out of order. When the victim returned to the stand, she could not remember how defendant broke in, but she remembered telling defendant that he was not allowed at her house. She did not invite defendant over, and she asked him to leave twice.

The victim testified that she remembered being in her bedroom. She repeatedly told defendant to stop, but he did not stop. He took her clothes off. When asked how many times it happened, the victim testified, "Only once. Only once. I'm sorry. It's just my mind, my head. I don't like to remember. I don't." She stated that she sometimes forgot and sometimes remembered because it was traumatic, and sometimes it was "all foggy" and she had trouble remembering what happened. After using a police report to refresh her memory, the victim testified: "Yes. My God. Yes, I remember." She believed that "it" happened two times. She remembered one incident with clarity and the second was blurry.

Police officers testified that, because defendant had previously fled through a window or door, they stayed outside while another police officer contacted the victim. One of the officers testified that he saw defendant crawl out a window, and after the officer told him to stop, defendant ran away. The officer put defendant on the ground, where he struggled, screamed expletives, and struck at the officers. He testified that two other officers helped him arrest defendant, and one officer's wrist was hurt as she tried to grab defendant's legs while he kicked. The officer testified that, after defendant was put in the police car, he began hitting his head and stated that he was suicidal. The officer took defendant to the hospital.

The police officer who interviewed the victim testified that, after the victim was informed defendant had been arrested, she appeared a little more comfortable. The interviewing officer's body-camera video was played for the jury. In the video, the victim informed the interviewing officer that defendant forced his way into her house and would not leave. The victim stated that defendant pulled her hair and she told defendant that she did not want to "do anything," but "he didn't take no for an answer." She stated that defendant made her go into a room with him, that she did not want to, that defendant wanted to have intercourse but she did not want to, and that she told him "no" but did it anyway because defendant told her he would beat her if she did not go into the bedroom with him and she did not want to get hurt. The victim stated that she tried to leave the bedroom, but defendant made her go back into the bedroom "to do that again." She agreed that she and defendant had sex a second time, and described that defendant pulled her pants off, held her down, and forced her to have intercourse with him. The assault stopped when they heard knocking on the door.

Defendant testified that he was at the victim's apartment on December 6, 2018. He stated that the victim had invited him over to help care for the children. He and the victim had an argument about a female contact in defendant's phone, but the argument did not escalate to physical violence. Defendant testified that, when he was smoking by a window, he heard his son tell the victim that the police were there. Defendant knew that he was not supposed to have contact with the victim, so he went out the window. According to defendant, as soon as he turned around, he was tackled and felt like people were jumping up and down or crawling on him. He could not breathe. He stated that the police did not tell him to stop.

Defendant denied that he was taken to the hospital because he was suicidal. He stated that he was taken to the hospital because he was having trouble breathing. Defendant denied repeatedly swearing at officers, doctors, and nurses while at the hospital. On rebuttal, the prosecution offered into evidence a police officer's body-camera video that showed defendant at the hospital, struggling with officers, yelling obscenities, and stating that he wanted to commit suicide.

The jury found defendant guilty of two counts of CSC-I, one count of first-degree home invasion, one count of resisting a police officer, and one count of aggravated stalking.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence did not sufficiently establish that he committed two acts of CSC-I because the victim testified that defendant only assaulted her once. We reject this argument because, although the victim's testimony was inconsistent, a reasonable jury could have concluded from the evidence that defendant sexually assaulted the victim twice.

This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id.* This Court will not interfere with the trier of fact's role to determine the weight of the evidence or the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). The trier of fact should normally resolve issues of conflicting evidence. *People v Yost*, 468 Mich 122, 133 n 14; 659 NW2d 604 (2003). The jury may not speculate, *People v Bailey*, 451 Mich 657, 673-675, 681-682; 549 NW2d 325 (1996), but the jury is otherwise generally entitled to pick and choose which evidence to believe. *People v Howard*, 50 Mich 239, 242-243; 15 NW 101 (1883).

In this case, the victim at one point testified that defendant assaulted her "[o]nly once." However, the victim also testified that she had trouble remembering the incident. After her memory was refreshed, the victim testified that she remembered two incidents of sexual assault, one with clarity and the other blurry. Additionally, in the body-camera video of the interviewing officer, the victim described that defendant made her go into the back bedroom to have sex with him. She did not want to and told defendant "no," but she had sex with him because she did not want to be beaten. She stated that she tried to leave, but defendant made her "do that again." The second time, defendant held her down, pulled off her pants, and forced her to have intercourse.

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could determine that defendant committed two separate sexual assaults. Although the victim initially testified that defendant only assaulted her once, she later testified that he assaulted her two times. Additionally, in a video taken on the night of the assaults, the victim described two distinct instances of sexual assault. A rational trier of fact could resolve the conflicting evidence in favor of finding that defendant committed two separate sexual assaults.

## III. VERDICT AGAINST THE GREAT WEIGHT OF THE EVIDENCE

Defendant raises several additional issues in a Standard 4 brief. First, he argues that his verdicts for CSC-I and home invasion were against the great weight of the evidence. We disagree.

To preserve a claim that the jury's verdict was against the great weight of the evidence, the party must move for a new trial in the trial court. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Defendant has not moved for a new trial on this basis. Generally, courts review a defendant's claim that the jury's verdict was against the great weight of the evidence to determine whether "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id.* at 616-617. This Court reviews unpreserved issues for plain error affecting a party's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and it affects substantial rights if it affected the outcome of the lower court proceedings. *Id.*

First, defendant argues that the jury's verdict was against the great weight of the evidence because the victim (1) was given immunity to lie under oath at the preliminary examination, (2) stated that she did not think the events in the police report happened, and (3) did not provide evidence of a home invasion. The party seeking reversal on appeal has the burden to provide the court with a record that establishes the factual basis of his or her argument. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000).

At the preliminary examination, the victim testified that she did not remember, did not want to take the stand, and could not testify. The district court admonished the victim that she had been subpoenaed, she had taken an oath, and she was required to tell the truth. The district court then directly asked her a few questions regarding the victim's knowledge of whether defendant was legally permitted to be in her home on the day of the sexual assaults, following which the prosecution declined to ask further questions. There is no evidence to suggest that the victim was given any kind of immunity or permitted to lie under oath; to the contrary, the district court told the victim that she was required to tell the truth whether or not she wanted to continue testifying. Furthermore, the victim never stated, at the preliminary examination or at trial, that the events in the police report did not occur, nor is there any evidence in the record that the events in the police report were untrue. The victim's only reference to the police report was when her memory was refreshed, after which she testified that she remembered. Finally, the record does not support defendant's argument that the victim stated a home invasion did not happen. The victim repeatedly testified that defendant broke in and refused to leave. The evidence did not clearly preponderate against the verdict.

Next, defendant argues that the verdict was against the great weight of the evidence because the interviewing officer testified differently at the preliminary examination than she did at trial.

-4-

We agree there was some discrepancy in the officer's testimonies, but the discrepancy only affected an insignificant background detail and was not sufficient to undermine the verdict.

The presence of conflicting testimony does not provide a sufficient ground to discard a verdict as against the great weight of the evidence. *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). This Court must defer to the trier of fact's determination "unless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the [trier of fact] could not believe it, or contradicted indisputable physical facts or defied physical realities . . ." *Id*. at 645-646.

At the preliminary examination, the interviewing officer testified that she tried to enter the building by buzzing a different apartment, but when there was no answer, she went to an ajar door. At trial, the same interviewing officer testified that she entered the apartment building by buzzing a different apartment, and the occupants of that apartment allowed her into the building. Although the officer's testimony about how she entered the building was directly contradictory in a small way, it did not dispute physical facts, defy physical reality, or deprive her testimony of all probative value. Furthermore, the discrepancy did not affect any important facts; rather, it is the kind of trivial detail one might reasonably expect a busy officer to mix up between different days' events. Had this inconsistency been brought to the jury's attention, it is extremely unlikely to have affected the outcome of the proceedings. See *Moody v Pulte Homes, Inc*, 423 Mich 150, 178; 378 NW2d 319 (1985). Defendant has not established that the inconsistency undermined the officer's testimony as to any relevant facts, so defendant has not established clear error affecting his substantial rights. See *Carines*, 460 Mich at 763.

## IV. NEWLY DISCOVERED EVIDENCE

Defendant argues that the statements of two witnesses who would have testified in his favor constituted newly discovered evidence warranting a new trial. We disagree. Newly discovered evidence will warrant a new trial only if "the evidence itself, not merely its materiality, was newly discovered[.]" *People v Grissom*, 492 Mich 296, 313; 821 NW2d 50 (2012) (quotation marks and citation omitted). Defendant argues that he asked defense counsel to subpoena these two witnesses for trial, but counsel failed to do so. Because defendant was aware of these witnesses at the time of trial, their evidence cannot be newly discovered.

## V. EVIDENTIARY ISSUES

Defendant raises several challenges to the admission of evidence. First, defendant argues that the trial court abused its discretion by admitting body-camera video of him in the hospital. Defendant argues that the video was improperly prejudicial and that he was not provided with a copy of the video before trial. We find no error or basis for reversal.

The trial court may not admit evidence if the danger of its prejudicial effect substantially outweighs its probative value. MRE 403. The prejudicial effect of evidence substantially outweighs its probative value when evidence is only marginally probative and there is a danger that the trier of fact may give it undue or preemptive weight, or when use of the evidence is inequitable. *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). Evidence is unfairly prejudicial if it leads to the danger of confusing the issues, misleading the jury, or the presentation

of needlessly cumulative evidence. *People v Mills*, 450 Mich 61, 74-75; 537 NW2d 909 (1995). Evidence is not prejudicial merely because it is damaging. *Id*. at 75. Evidence is probative if it has any tendency to make a fact of consequence more or less probable. *People v Crawford*, 458 Mich 376, 389-390; 582 NW2d 785 (1998). Evidence that affects the credibility of a witness is generally relevant. *People v King*, 297 Mich App 465, 476-477; 824 NW2d 258 (2012).

Furthermore, the prosecution is entitled to respond to a defendant's testimony with impeachment evidence. *People v Fields*, 450 Mich 94, 110; 538 NW2d 356 (1995). A defendant cannot be surprised by evidence of which he or she has actual knowledge. *People v Taylor*, 159 Mich App 468, 486 n 27; 406 NW2d 859 (1987). If a defendant has opened a door with his or her testimony, "the prosecutor may then walk through it, armed with contrary evidence, on rebuttal, and the fact that the contrary evidence is damaging to the defense does not equate with error." *People v Steele*, 283 Mich App 472, 486; 769 NW2d 256 (2009). When a defendant introduces evidence, the defendant is aware that the prosecution might rebut it. *Id*. at 487.

During his testimony, defendant denied that he was taken to the hospital because he was suicidal. Defendant also denied that he repeatedly swore at officers, doctors, and nurses while at the hospital. On rebuttal, the prosecution offered a police officer's body-camera video. In the video, defendant repeatedly yelled profanities, asked for a knife, and stated that he was going to kill himself. This evidence was probative because it tended to establish that defendant was not a credible witness. The evidence was not unfairly prejudicial solely because it damaged defendant's case. There is no indication that the evidence of defendant's conduct at the hospital confused the issues or misled the jury regarding whether defendant had actually committed the crimes, and it was not cumulative to the prosecution's other evidence. Rather, it was simply a fair response to defendant's claims during his testimony. Furthermore, there is no evidence that defendant lacked actual knowledge of his own conduct at the hospital. Therefore, he cannot have been surprised by the substance of the evidence in the video. We conclude that the trial court did not plainly err by allowing the prosecution to offer this evidence.

Secondly, defendant argues that the trial court abused its discretion by admitting photographs of the victim taken following an act of domestic violence committed by defendant against the victim on an earlier occasion. Defendant contends that the photographs prejudiced him by accusing him of doing things he had not done. He also argues that the prosecution erred by reading an entire case into the record, which seems to refer to the testimony about the same incident. Defendant's arguments lack merit because the prosecution was permitted to introduce other acts of defendant's domestic violence, regardless of whether defendant had been convicted of the acts.

Evidence of a defendant's other acts of domestic violence is admissible if the evidence is relevant and not unduly prejudicial. *Cameron*, 291 Mich App at 609, citing MCL 768.27b. The purpose of this statute is to provide the jury with "a full and complete picture of a defendant's history" to shed light on the likelihood that a crime was committed. *Id*. at 610 (quotation marks and citation omitted). Evidence is unfairly prejudicial if it leads to the danger of confusing the issues, misleading the jury, or the presentation of needlessly cumulative evidence. *Mills*, 450 Mich at 75. MCL 768.27b permits evidence of other acts that did not result in a conviction. *People v Watkins*, 491 Mich 450, 489, 486; 818 NW2d 296 (2012).

In this case, the victim described two exhibits as photographs depicting her after defendant hit her in November 2018. The victim and an arresting officer testified about the incident. The evidence was not cumulative and tended to provide the jury with defendant's history of committing domestic violence against the victim. Additionally, there is no reason to believe that the jury confused the November 2018 incident, during which defendant hit the victim, with the December 6, 2018 incident, during which defendant sexually assaulted her. We conclude that the trial court did not err by admitting evidence of defendant's domestic violence in November 2018.

## VI. JUROR BIAS

Defendant argues that a juror was improperly allowed to remain on the jury despite being biased against him. Defendant arguably waived this argument because trial counsel expressed satisfaction with the jury while still having peremptory challenges available. See *People v Legrone*, 205 Mich App 77, 82; 517 NW2d 270 (1994). In any event, a juror is sufficiently unbiased if "the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *People v Cline*, 276 Mich App 634, 641; 741 NW2d 563 (2007). Although the juror reported having had a conversation with the police that resulted in someone else being charged with sexual assault, the juror also stated, "I feel like I can be fair and honest because it literally has nothing to do with this young man," and the juror stated that defendant was innocent because the juror had not heard any evidence. Defendant has not established that the juror was biased.

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises several arguments that his counsel provided ineffective assistance. We disagree.

Defendant has not preserved this issue by moving for a new trial or for an evidentiary hearing, either in the trial court or in this Court. See *People v Ginther*, 390 Mich 436, 442-444; 212 NW2d 922 (1973). Because no evidentiary hearing has been held, our review is generally limited to mistakes apparent from the record. *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003). When considering an unpreserved claim of ineffective assistance of counsel, this Court must consider the possible reasons for counsel's actions. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). We may, however, consider materials not in the record for the limited purpose of deciding whether to order the matter remanded for an evidentiary hearing. *People v Moore*, 493 Mich 933, 933; 82 NW2d 580 (2013). A party asserting ineffective assistance has the burden to establish the factual predicate of his or her claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Therefore, defendant must establish that trial counsel made such serious errors that he was effectively not acting as counsel, and defendant must show a reasonable probability that those errors affected the outcome of the proceedings. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001).

First, defendant argues that trial counsel did not prepare with him, ignored his letters, and failed to subpoena witnesses. Defendant has not established the factual predicate for this claim. At the pretrial hearing immediately before trial, defendant was placed under oath, and the following exchange took place:

-7-

THE COURT. And you've had enough time to prepare for trial with your counsel?

THE DEFENDANT. Yes.

THE COURT. And you're satisfied with your counsel?

THE DEFENDANT. Yes, Your Honor.

There is no evidence in the rest of the record to establish that defendant expressed dissatisfaction with the way that counsel prepared for his trial, or that counsel was actually unprepared. As will be discussed in greater detail below, during trial, an incident occurred during which defendant's counsel asked to withdraw, following which defendant asked for his trial counsel to continue his representation. The record reflects that counsel did, in fact, consult with defendant. To the extent counsel declined to accept all of defendant's suggestions for how to conduct the defense, that does not establish either a lack of preparation or indifference to his client.

Next, defendant argues that defense counsel did not object to hearsay. Defendant does not identify which statements defendant believes that defense counsel should have challenged. If an appellant does not assert the factual basis for his position, he has abandoned it on appeal. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). We conclude that defendant has abandoned this argument.

Finally, defendant argues that counsel provided ineffective assistance by failing to ask questions that defendant wanted to ask the witnesses. The record does not support that counsel provided ineffective assistance by failing to ask questions.

Defense counsel's decisions to call witnesses and present evidence are matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). When considering an unpreserved claim of ineffective assistance of counsel, this Court must consider the possible reasons for counsel's actions. *Vaughn*, 491 Mich at 670. During the examination of the interviewing officer, defendant stated, "I have something further." The trial court took a break for defense counsel to address the issue with defendant. After defendant was brought back in, he stated that he had given defense counsel questions to ask but counsel had not asked them. The content of the questions is not apparent from the record. Critically, defendant has also not articulated on appeal what questions he thinks counsel should have asked, thereby failing to provide us with any basis for even considering a remand for an evidentiary hearing. See *Moore*, 493 Mich at 933. Counsel's performance is presumed to have constituted sound trial strategy. *Carbin*, 463 Mich at 600. Defendant has not provided us with any basis for overcoming that presumption.

## VIII. SUBSTITUTION OF COUNSEL

Defendant argues that because counsel expressed that he was afraid of defendant, he was unable to provide effective assistance and deliberately prejudiced defendant's trial. Although defense counsel expressed fear of defendant following what the trial court described as "some not so nice conversation," the record does not support defendant's argument that he should have been granted other counsel.

This Court reviews for an abuse of discretion the trial court's decision concerning substitution of counsel. *People v Buie*, 298 Mich App 50, 67; 825 NW2d 361 (2012). The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or when it makes an error of law. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). A defendant is entitled to interested counsel, and a complete breakdown of the attorney-client relationship may warrant the appointment of new counsel. *Buie*, 298 Mich App at 67-68. However, a defendant may not deliberately cause a breakdown in the relationship, and new counsel may only be appointed for "good cause" and where the substitution would not be disruptive. *Id.* Additionally, reversal is not warranted when defendant was not prejudiced by a decision not to provide substitute counsel. See *id.* at 68.

At the beginning of trial on the day following defendant's statement that counsel had not asked questions that defendant wished to ask, defense counsel stated that, "in a word I'm—not to put too fine a point on it, I'm afraid of [defendant]. He—I'm caught between a rock and a hard place here, Your Honor." The following conversation occurred:

> THE COURT. Would you like your attorney to continue?
>
> THE DEFENDANT. Yes, Your Honor.
>
> THE COURT. Can you behave yourself?
>
> THE DEFENDANT. Yes.
>
> THE COURT. Can you talk with him in a polite manner?
>
> THE DEFENDANT. Yes, Your Honor.

A police deputy testified that he had placed a "stun cuff" on defendant, which was later explained as being "taser cuff." The trial court declined defense counsel's request to withdraw on the basis that defendant indicated that he would behave and that defendant was wearing a stun cuff. When asked whether he was prepared to represent defendant and proceed, counsel responded, "That is very much correct, Your Honor."

To the extent that there was a breakdown in the attorney-client relationship, defendant caused it. Additionally, after defendant was restrained, counsel indicated that he was prepared to proceed and represent defendant. Further, there is no indication in the record that defendant was actually prejudiced, or that defense counsel performed deficiently during the remainder of the trial. We also observe that defendant had, as will be discussed below, a release on a personal recognizance bond; and throughout the trial, the court repeatedly warned defendant that if he caused further disruptions, the conclusion of his trial would take even longer. We conclude that the trial court's decision not to appoint replacement counsel did not fall outside the range of reasonable and principled outcomes.

## IX. DNA EVIDENCE

Defendant argues that the prosecution denied defendant a fair trial by failing to perform a DNA test on his clothing. We disagree. The prosecutor must give the defendant any favorable

evidence that is material to guilt or punishment. *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963); *People v Burger*, 331 Mich App 504, 518; 953 NW2d 424 (2020). However, "[t]he prosecutor's office is not required to undertake discovery on behalf of a defendant." *People v Leo*, 188 Mich App 417, 427; 470 NW2d 423 (1991). In this case, there is no indication that the prosecution possessed exculpatory DNA evidence. Officers testified that defendant's clothing was collected but not tested for DNA. The prosecution was not required to perform DNA testing or other discovery for defendant. Furthermore, although defendant asserts that DNA testing would have exonerated him, he does not explain how.

## X. DENIAL OF BOND

Defendant argues that the trial court erred by refusing to grant him pretrial release on personal recognizance pursuant to MCR 6.004(C).[1] The trial court refused to grant the release, concluding that defendant was likely to present a danger to the victim. We find no error by the trial court.

Generally, a defendant must be released on personal recognizance "unless the court finds by clear and convincing evidence that the defendant is likely either to fail to appear for future proceedings or to present a danger to any other person or the community." MCR 6.004(C). Clear and convincing evidence is clear, direct, and weighty evidence that allows the finder of fact to reach a conclusion without hesitancy. *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995). Circumstantial evidence may be clear and convincing. See *Foodland Distrib v Al-Naimi*, 220 Mich App 453, 457-458; 559 NW2d 379 (1996) (concerning civil fraud claims).

In this case, the charges included counts of CSC-I, home invasion, domestic violence, and aggravated stalking. Testimony at the preliminary examination established that defendant previously had violated a no-contact order. Defense counsel acknowledged that the victim had been called from the jail more than two thousand times but denied that defendant made the calls. The trial court found by clear and convincing evidence that defendant presented a danger to the victim. It noted that there were 2,028 phone calls from the jail to the victim, which was circumstantial evidence of a danger to the victim. It additionally found that the charges in the case were serious, which supported denying bond. We are not definitely and firmly convinced that the trial court made a mistake when it found that there was clear and convincing evidence of a danger to the victim, which supported denying bond.

---

[1] To the extent that defendant's argument may be construed as an argument that the "180-day rule," MCL 780.131, was violated, we would reject this argument. The court rule addresses a release on bond, whereas the statute may require dismissal of charges. *People v Lown*, 488 Mich 242, 249 n 4; 794 NW2d 9 (2011). However, although defendant's counsel made a reference to "the 180-day rule" at the bond hearing, defendant did not request dismissal of the charges. There is no evidence in the record that the 180-day rule was ever triggered, so it is impossible for it to have been violated. See *People v Rivera*, 301 Mich App 188, 192; 835 NW2d 464 (2013).

## XI. SENTENCING

Defendant challenges the scoring of offense variables (OVs) 4, 10, and 19, and prior record variable (PRV) 1. We reject defendant's challenges because the trial court's findings regarding his OVs were not clearly erroneous and the trial court did not rely on PRV 1 in calculating defendant's guidelines score.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Any underlying legal determinations are reviewed de novo. *Id*. A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

Defendant argues that the trial court should not have assessed 10 points for OV 4 because the victim did not seek psychological treatment. A victim need not seek treatment for OV 4 to apply. The trial court must score 10 points for OV 4 if a "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). Whether the victim has sought treatment does not determine whether the injury may require professional treatment. MCL 777.34(2). The trial court opined that the victim had clearly suffered a psychological injury, based on her behavior at trial. The record reflects that the victim required a break and appeared sick. The victim also testified that the assaults were traumatic and affected her memory. We are not definitely and firmly convinced that the trial court made a mistake when scoring OV 4.

Defendant argues that the trial court should not have scored OV 10 because the victim was not vulnerable or manipulated. The trial court properly assesses 10 points for OV 10 if a defendant exploited a domestic relationship with the victim. MCL 777.40(1)(b). A "domestic relationship" is "a familial or cohabiting relationship." *People v Jamison*, 292 Mich App 440, 447; 807 NW2d 427 (2011). The victim and defendant had children in common, which establishes a familial relationship. A defendant has exploited a victim if the defendant "manipulate[d] a victim for selfish or unethical purposes." MCL 777.40(3)(b). Defendant testified that he had gone to the victim's apartment to care for the children. The victim informed the interviewing officer that she wanted to end her relationship with defendant but felt unable to do so. We are not definitely and firmly convinced that the trial court made a mistake when it found that defendant manipulated his familial relationship with the victim for unethical purposes.

Defendant argues that the trial court improperly assessed 15 points for OV 19 because no police officers were injured. The trial court must assess 15 points for OV 19 if "[t]he offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services." MCL 777.49(b.) Fleeing from police after there was a command to stop may be interference with the administration of justice. *People v Ratcliff*, 299 Mich App 625, 633; 831 NW2d 474 (2013), vacated in part on other grounds 495 Mich 876 (2013). In this case, defendant kicked, screamed at, and swung at officers who were trying to arrest him. One officer hurt her wrist while trying to restrain defendant. We are not definitely and firmly convinced that the trial court made a mistake when it found that defendant had used force to attempt to interfere with the administration of justice.

Finally, defendant argues that the trial court improperly assessed points for PRV 1 because he had only two prior low-level felony convictions. Because the PSIR that defendant has provided lacks the sentencing information worksheet, we have no evidence that the trial court scored any points for PRV 1. We only know that defendant was assessed a total of 80 points for all of his PRVs. However, by necessary inference, it does not appear that PRV 1 was scored. Defendant's two Class E offenses and two Class G offenses were four prior low-severity felony convictions, for which the trial court properly assessed 30 points under PRV 2. See MCL 777.52(1)(a). Defendant had three prior low-severity juvenile adjudications, for which the trial court properly assessed 10 points under PRV 4. See MCL 777.54(1)(c). Defendant had 10 prior misdemeanor convictions, for which the trial court properly assessed 30 points under PRV 5. See MCL 777.55(1)(a). Finally, defendant was on probation at the time of the offense, warranting the assessment of 10 points under PRV 6. See MCL 777.56(c). Because the appropriately-scored PRVs add up to 80 points, defendant's PRV assessment of 80 points does not appear to have relied upon on PRV 1, and defendant has provided us with no basis to conclude otherwise.

We affirm defendant's convictions and sentences.

/s/ Kathleen Jansen
/s/ Michael J. Kelly
/s/ Amy Ronayne Krause